No. 120,767

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS
*Appellee,*

v.

ANITA JO ALBANO,
*Appellant.*


SYLLABUS BY THE COURT


1.

An appellate court employs a multi-step process to review claims of jury instruction error. First, the court must decide whether the issue was preserved. Second, it must decide whether an error occurred by determining whether the instruction was legally and factually appropriate. Finally, if error is found, the court must then determine whether the error is reversible.


2.

If K.S.A. 60-455 evidence is admitted at trial, then a limiting instruction is generally required. But the district court's failure to give a limiting instruction concerning K.S.A. 60-455 evidence is not always reversible error. Under the facts and circumstances of this case, the district court's failure to give a limiting instruction concerning the admissibility of the defendant's prior drug convictions was not clearly erroneous.


3.

The district court does not undermine the jury's power of nullification by instructing the jury that it "must" follow the law and that it is the jury's "duty" to do so.


1

4.

The sentencing court's use of judicial findings of prior convictions to sentence a defendant under the Kansas Sentencing Guidelines Act does not violate section 5 of the Kansas Constitution Bill of Rights.

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed April 10, 2020. Affirmed.

*Heather Cessna* and *Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Kelly G. Cunningham*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE and GARDNER, JJ.

MALONE, J.:  Anita Jo Albano appeals following her convictions of two counts of distribution of a controlled substance within 1,000 feet of a school. Albano claims:  (1) The district court erred by failing to give a limiting instruction concerning the admission into evidence of her prior drug convictions; (2) the district court undermined the jury's power of nullification by instructing the jury that it "must" follow the law and it was the jury's "duty" to do so; and (3) the sentencing court's use of judicial findings of prior convictions to sentence a defendant under the Kansas Sentencing Guidelines Act (KSGA) violates section 5 of the Kansas Constitution Bill of Rights. For the reasons stated in this opinion, we reject Albano's claims and affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2017, Riley County Police Officer Michael Dunn assisted in three controlled buys between a confidential informant, S.O., and Albano. Each of the buys took place in Albano's apartment, 280 feet from an elementary school. The first controlled buy occurred on January 19, 2017. S.O. bought 12 oxycodone pills from Albano for $180.

2

S.O. had texted Albano to set up the buy. S.O. walked into Albano's apartment, got the pills, and returned to Dunn's car a few minutes later.

On January 20, 2017, S.O. bought one oxycodone pill from Albano for $20. S.O. first went to Albano's door but received no answer, so he called her. Shortly after the call, Albano walked toward her apartment from an alley and took S.O. inside. S.O. returned to Dunn's car a few minutes later with the pill.

On April 10, 2017, S.O. bought 10 oxycodone pills from Albano for $200. S.O. walked in, got the pills, and returned to Dunn's car a short time later. All three of the buys were audio and video recorded by a device attached to S.O.

On September 14, 2017, the State filed an amended complaint charging Albano with three counts of distribution of a controlled substance within 1,000 feet of a school based on the transactions on January 19, January 20, and April 10, 2017. The district court held a jury trial on October 31, 2018. Dunn testified to driving S.O. to each of the three buys and the sequence of events. Dunn also testified that Albano appears in all three video recordings of the buys. Riley County Police Detective Robert Dierks testified that he strip-searched S.O. before and after the January 19 and 20, 2017 buys and that nothing was found. Dierks also explained that the department paid S.O. for completing the buys. Riley County Police Sergeant Nathan Boeckman, S.O.'s handler, testified that he strip-searched S.O. before and after the April 10, 2017 buy and nothing was found.

S.O. testified about the three controlled buys. S.O. was originally working off charges as an informant but was now paid for conducting buys. S.O. explained that Albano was not one of the original targets identified by the police, but he brought Albano's name up to them because he did drugs with her before. S.O. was the one who reached out to Albano asking to buy drugs. Albano did not respond two of the times he reached out, but S.O. knew he could just drop by her apartment to get the pills because

3

she had an open-door policy. At the time of the buys, S.O. had a prescription for Percocet. S.O. admitted that he was using methamphetamine and opiates during early 2017, but he did not use drugs when doing controlled buys for the police.

Albano testified on her own behalf, presenting an entrapment defense. Albano testified that she had prior convictions for distributing drugs, but she had successfully completed probation 4 months before the first buy and she received only one sanction during the entire 22-month probation period. Albano stated that during the time frame the buys occurred she was "in the business of putting [her] home together, and trying to get [her] life put back together."

Albano testified that she had a prescription for oxycodone because of her severe back problems. Albano explained that she had since asked her doctor to take her off of oxycodone because "people, including [S.O.], were constantly berating [her] in an effort to get those pills, and if [she] didn't sell them . . . they ended up being stolen." Albano admitted to giving S.O. the pills on January 19 and 20, 2017, within 1,000 feet of an elementary school. She said she felt pressured to sell S.O. the pills because he was always reaching out to her and he was at her house daily; he was so persistent that she gave him the pills just to get him to leave.

Albano did not remember giving S.O. the 10 pills on April 10, 2017. She stated that since she did not get paid for the first 12 pills, she would not have sold to him after that. When asked what she was doing counting $200 in the April 10, 2017 video if she was not selling S.O. pills, Albano responded that she was randomly counting her own money since she had just gotten paid and she wanted to know what she had in her wallet.

The State called Riley County Police Corporal Neil Ramsey as a rebuttal witness. Ramsey testified that he interviewed Albano about the three buys and Albano told him

4

that she did not "typically" sell pills and that she had sold them in the past but not during the time frame he asked about.

The jury found Albano not guilty of count one—distribution on January 19, 2017—and guilty on counts two and three—distribution on January 20, 2017, and April 10, 2017. On January 28, 2019, the district court sentenced Albano to 101 months' imprisonment and 36 months' postrelease supervision. Albano timely appealed the district court's judgment.

## DID THE DISTRICT COURT ERR BY ALLOWING ADMISSION OF ALBANO'S PRIOR DRUG CONVICTIONS WITHOUT GIVING A LIMITING INSTRUCTION?

Albano first claims the district court erred by failing to give a limiting instruction concerning the admission into evidence of her prior drug convictions. It was Albano herself who first testified about her prior convictions. Albano concedes that she did not request a limiting instruction at trial, but she argues that a limiting instruction was factually and legally appropriate because her prior convictions met the definition of K.S.A. 60-455 evidence. The State argues that Albano is precluded from seeking review on this issue because she invited the error by not requesting the limiting instruction. In the alternative, the State argues that any error was not clearly erroneous.

The court employs a multi-step process to review claims of jury instruction error. First, this court must decide whether the issue was preserved. Second, it must decide whether an error occurred by determining whether the instruction was legally and factually appropriate. In addressing the first two steps, this court exercises unlimited review. *State v. Williams*, 308 Kan. 1439, 1451, 430 P.3d 448 (2018).

If error is found, this court must then determine whether the error is reversible. 308 Kan. at 1451. Because Albano did not object at trial, a clear error standard applies.

5

See K.S.A. 2019 Supp. 22-3414(3); 308 Kan. at 1451. Under a clear error standard, the appellate court must decide "whether it is 'firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" 308 Kan. at 1451. Albano has the burden of establishing clear error. See *State v. Gentry*, 310 Kan. 715, 721, 449 P.3d 429 (2019). To determine whether she met her burden, the court examines the entire record de novo. See 310 Kan. at 721.

*We will not apply the invited error doctrine.*

A defendant's ability to allege an instructional error is not absolute. *State v. Stewart*, 306 Kan. 237, 248, 393 P.3d 1031 (2017). The invited error doctrine states that a "defendant may not invite and lead a district court into error and then complain of the error on appeal." 306 Kan. at 248. The State argues that Albano invited this error by failing to request the instruction in her proposed instructions or at the jury instruction conference. Albano counters that she did not invite the error but that she simply did not request the instruction or object to its omission.

The Kansas Supreme Court has found that the invited error doctrine applies when: (1) the district court gave the defendant's requested instruction; (2) the defendant agreed to the wording of an instruction; or (3) the defendant agreed to a response to a jury question. See *Stewart*, 306 Kan. at 248-49. In these types of cases, the defendant took affirmative action to cause the error that he or she later appealed.

Here, there was no agreement by Albano that the district court should not give a limiting instruction. The only action Albano took concerning this issue was choosing to introduce the evidence of her prior convictions in her case-in-chief. But a defendant does not waive the applicability of a limiting instruction simply by introducing K.S.A. 60-455 evidence because a limiting instruction is required regardless of which party introduced

6

the evidence. *State v. Molina*, 299 Kan. 651, 660, 325 P.3d 1142 (2014). Thus, the invited error doctrine does not prevent Albano from arguing this issue on appeal.

*The district court erred in failing to give a limiting instruction, but this failure was not clearly erroneous.*

Turning to the merits, Albano argues that a limiting instruction was appropriate because her prior convictions met the statutory definition of K.S.A. 60-455 evidence. She asserts that a limiting instruction is legally necessary when a defendant's prior convictions are admitted because otherwise the jury will impermissibly use the prior convictions as general propensity evidence.

K.S.A. 2019 Supp. 60-455 states:

"(a) Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion.
"(b) Subject to K.S.A. 60-445 and 60-448, and amendments thereto, such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

If K.S.A. 60-455 evidence is admitted, then a limiting instruction is required. *State v. Butler*, 307 Kan. 831, 860, 416 P.3d 116 (2018). At trial, Albano testified about her prior convictions to explain that she was working to get her life on track and that she did not want to sell the pills. Albano mentioned her convictions again in her closing when discussing her entrapment defense. Albano does not explain on appeal what a limiting instruction would have said in this case, other than to instruct the jury not to consider the evidence of her prior convictions to prove that she had a propensity to commit the crimes for which she was charged. In any event, a limiting instruction is required for the

7

admission of K.S.A. 60-455 evidence regardless of which party introduced the evidence. *Molina*, 299 Kan. at 660. Thus, we conclude the district court should have given a limiting instruction in this case and its failure to do so was erroneous.

But the district court's failure to give a limiting instruction concerning K.S.A. 60-455 evidence is not always reversible error. *State v. Gunby*, 282 Kan. 39, 59, 144 P.3d 647 (2006). Albano argues that without the limiting instruction, "the jury was left . . . potentially believing that it could generally use those prior crimes as propensity evidence when deciding Ms. Albano's ultimate guilt." The State argues that the district court's failure to give a limiting instruction in this case was not clearly erroneous.

We agree with the State that the district court's failure to give a limiting instruction in this case was not clearly erroneous. Albano relied on an entrapment defense. To pursue an entrapment defense, the defendant must admit substantial involvement in the crimes. See *State v. Hall*, No. 117,481, 2018 WL 3596257, at *4 (Kan. App. 2018) (unpublished opinion), *rev. denied* 309 Kan. 1351 (2019). Albano did just that as she admitted on direct examination that she gave S.O. the oxycodone pills on January 19 and 20, 2017, within 1,000 feet of a school. The real issue at trial was whether S.O. induced or solicited Albano to sell the pills when she was not predisposed to do so. It is unclear how the jury could have impermissibly relied on Albano's prior convictions as general propensity evidence when there was no real dispute that she committed the acts in question.

Even assuming it was possible for the jury to consider Albano's prior convictions as general propensity evidence, we are not "'firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" *Williams*, 308 Kan. at 1451. The verdict establishes that the jury did not impermissibly rely on Albano's prior convictions to establish her guilt because the jury acquitted Albano of one of the three charges. If the jury had impermissibly relied on Albano's prior crimes to determine her guilt, it would have convicted her on all counts. See *State v. Holman*, 295 Kan. 116, 129,

8

284 P.3d 251 (2012), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). Based on our review of the entire record, we find the district court's failure to give a limiting instruction was not clearly erroneous.

## DID THE DISTRICT COURT UNDERMINE THE JURY'S POWER OF NULLIFICATION BY INSTRUCTING THE JURY THAT IT "MUST" FOLLOW THE LAW?

Albano next claims the district court undermined the jury's power of nullification by instructing the jury that it "must" follow the law and it was the jury's "duty" to do so. Albano complains of language in Instruction No. 13 which stated: "Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions." She also complains of language in Instruction No. 15 which stated in part that "it is your duty as sworn triers in this case to be governed in your deliberations and final conclusions by the evidence as you understand and remember it, and by the law as given in these instructions." Albano argues that the district court committed clear error by giving these instructions because they prevented the jury from sending a message to the Riley County Police Department about its questionable use of confidential informants.

The State argues that the Kansas Supreme Court, in *State v. Boothby*, 310 Kan. 619, 448 P.3d 416 (2019), addressed the same instructional language now challenged by Albano and determined that it did not interfere with the jury's power to nullify. The State also points out that our Supreme Court has not recognized "a right" to nullification. In her reply brief, Albano concedes that the language she challenges in Instruction No. 13 is identical to that at issue in *Boothby*. But she argues that unlike *Boothby*, she also challenges the language in Instruction No. 15 and the combined effect of these two erroneous instructions was a misstatement of the law.

9

As in her first issue, this court applies the three-step analysis for claims of jury instruction error. Because Albano did not object to either instruction, the clear error standard applies. See K.S.A. 2019 Supp. 22-3414(3); *Williams*, 308 Kan. at 1451.

As the State correctly points out, in *Boothby*, the Kansas Supreme Court addressed the same challenge to the language found here in Instruction No. 13. Boothby argued that "the district court erred when it instructed the jury: 'Your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions'" because "it told the jury that it did not have a right to nullify." 310 Kan. at 629. The Kansas Supreme Court stated that Kansas does not recognize a right to jury nullification. 310 Kan. at 631. The court found that the district court did not err in giving the challenged instruction because it was legally correct:

> "[T]he challenged instruction was legally correct. . . . This is an accurate—and bedrock—statement of law that mirrors the juror's oath; upholds the role of judge and jury; and most importantly, protects the accused. . . . Thus, a district court does not err when it tells a jury to follow the law. [Citations omitted.]" 310 Kan. at 631-32.

Our Supreme Court pointed out that the district court does not undermine the power to nullify by instructing the jury to follow the law because nullification is a deliberate rejection of the mandatory charge to follow the law. 310 Kan. at 632. Because our Supreme Court has determined that the language Albano complains of in Instruction No. 13 is legally correct and does not interfere with the jury's power to nullify, she has no right to relief on that claim. *Ponds v. State*, 56 Kan. App. 2d 743, 753-54, 437 P.3d 85 (2019) ("This court is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position.").

Finally, Albano's challenge to Instruction No. 15 also fails. Although Instruction No. 15 used different wording than Instruction No. 13, the complained of language is

substantively identical to the language challenged by Boothby: it is telling the jury to follow the law. The district court does not err when it tells the jury to follow the law nor does it undermine the power to nullify. *Boothby*, 310 Kan. at 632. Thus, the district court did not err in giving these legally correct instructions. Finding no error, we need not engage in the clear error analysis. See *Williams*, 308 Kan. at 1451.

DOES THE SENTENCING COURT'S USE OF JUDICIAL FINDINGS OF PRIOR CONVICTIONS VIOLATE SECTION 5 OF THE KANSAS CONSTITUTION BILL OF RIGHTS?

Finally, Albano claims for the first time on appeal that the sentencing court's use of judicial findings of prior convictions to sentence a defendant under the KSGA violates section 5 of the Kansas Constitution Bill of Rights. Section 5 of the Kansas Constitution Bill of Rights states: "The right of trial by jury shall be inviolate." Kan. Const. Bill of Rights, § 5. Section 5 is a basic and fundamental right. *State v. Love*, 305 Kan. 716, 734, 387 P.3d 820 (2017). Thus, Albano correctly argues that this court can hear her constitutional challenge raised for the first time on appeal because it is necessary to prevent the denial of a fundamental right. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). A constitutional challenge to the KSGA involves a question of law subject to unlimited review. *State v. Wetrich*, 307 Kan. 552, 555, 412 P.3d 984 (2018).

Albano concedes that this argument has been rejected with respect to the United States Constitution. See *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). Similarly, Albano admits that the Kansas Supreme Court has repeatedly rejected the argument that the KSGA violates the Sixth and Fourteenth Amendments to the United States Constitution. See *State v. Ivory*, 273 Kan. 44, 45-48, 41 P.3d 781 (2002). But Albano asserts that the jury trial right under

11

section 5 of the Kansas Constitution Bill of Rights provides greater protection than the jury trial right under the Sixth Amendment to the United States Constitution.

"'Section 5 preserves the jury trial right as it historically existed at common law when our state's constitution came into existence.'" *Love*, 305 Kan. at 734. Seizing on this rule, Albano argues that because the common law required a defendant's criminal history be proven to a jury when the Kansas Constitution came into existence, the KSGA—which allows judicial findings of criminal history—is unconstitutional under section 5.

The State points out that the Kansas Supreme Court has determined that the KSGA's use of judicial findings of criminal history does not violate the Sixth Amendment to the United States Constitution. The State argues that Albano has cited no authority to support her claim that section 5 of the Kansas Constitution Bill of Rights provides greater protection than the jury trial right in the United States Constitution.

Albano's constitutional challenge fails for two reasons. First, there is a lack of authority to support Albano's claim that section 5 provides greater protection—by requiring that a jury determine criminal history—than the federal jury trial right, which does not require a jury to make such findings. Second, Albano's argument fails under a section 5 analysis because there is no indication that a jury was required at common law to determine criminal history when the Kansas Constitution was adopted.

*There is no authority for the proposition that section 5 provides greater protection than the federal jury trial right by requiring a jury to determine criminal history.*

Only one prior case has addressed the exact argument of whether the KSGA's judicial findings of criminal history violates section 5 of the Kansas Constitution. In *State v. Valentine*, No. 119,164, 2019 WL 2306626, at *6 (Kan. App. 2019) (unpublished opinion), *rev. denied* 310 Kan. ___ (December 17, 2019), this court rejected the same

section 5 argument Albano makes, finding *Valentine* did not show that section 5 provides greater protection than the federal jury trial right:

> "In view of the Kansas Supreme Court's consistent rejection of the Sixth Amendment-based version of Valentine's current argument, it is incumbent on Valentine to provide authority showing our Supreme Court interprets—or would interpret—§ 5 of the Kansas Constitution Bill of Rights to require jury findings that the Sixth Amendment does not. He fails to do so. 'This court is duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its previous position.' Valentine's argument fails. [Citation omitted.]"

Albano argues that *Valentine* is wrongly decided because the court did not address why section 5's "inviolate" jury trial right did not extend to the judicial findings of prior convictions. Albano argues that the plain language of section 5 shows that it provides greater protection than the Sixth Amendment because "inviolate means inviolate."

Although the *Valentine* court did not explicitly address the inviolate language, there seems to be general support for its finding. The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. As Albano points out, the Kansas jury trial right in section 5 states that the right to a jury trial shall be "inviolate." Kan. Const. Bill of Rights, § 5. However, simply because the Kansas jury trial right uses the word "inviolate" does not mean it necessarily provides protection that the Sixth Amendment does not.

The general rule in Kansas is that the Kansas Constitution is interpreted similarly to its federal counterpart even though the language may differ. See *State v. Lawson*, 296 Kan. 1084, 1091, 297 P.3d 1164 (2013) ("But, at least for the past half-century, this court has generally adopted the United States Supreme Court's interpretation of corresponding federal constitutional provisions as the meaning of the Kansas Constitution,

13

notwithstanding any textual, historical, or jurisprudential differences."). So even though section 5 contains textual difference from the federal jury trial right, generally it would be interpreted similarly to its federal counterpart and Albano cites no authority to support her claim that section 5 should be interpreted broader than its federal counterpart.

In fact, caselaw seems to imply, as explained below, that the Kansas criminal jury trial right in section 5 is equivalent to the federal jury trial right. In 1922, the Kansas Supreme Court held that section 10 of the Kansas Constitution—which recognizes a criminal defendant's right to "speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed"—includes the right to a jury trial as established in section 5:

> "So far as the right to a jury trial is concerned, as specified in section 10, it is not to be regarded as an extension of that granted in section 5. In the latter section there is an enumeration of a number of the rights that the accused shall have in a prosecution for a public offense, *and it includes the right to a jury trial given in the earlier section*, to which is added the requirement that the accused shall be given a speedy public trial in the county where the offense was committed." (Emphasis added.) *In re Clancy, Petitioner*, 112 Kan. 247, 249, 210 P. 487 (1922).

This idea, that section 10 includes the criminal jury trial right as guaranteed in section 5, is implicitly recognized in modern cases as section 5 is cited along with section 10 of the Kansas Constitution whenever criminal jury trial issues are considered. See, e.g., *State v. Redick*, 307 Kan. 797, 803, 414 P.3d 1207 (2018) (stating that "[t]he Sixth Amendment to the United States Constitution and Sections 5 and 10 of the Kansas Constitution Bill of Rights guarantee a criminal defendant the right to a jury trial" when addressing whether a defendant waived his jury trial right).

Kansas caselaw has analyzed section 10's jury trial right the same way as the federal jury trial right in the Sixth Amendment of the United States Constitution. See

*State v. Carr*, 300 Kan. 1, 56, 331 P.3d 544 (2014) (analyzing section 10 of the Kansas Constitution and stating: "We have not previously analyzed our state constitutional language differently from the federal provision."), *rev'd and remanded on other grounds*, 577 U.S. ___, 136 S. Ct. 633, 193 L. Ed. 2d 535 (2016). Albano concedes that the Kansas Supreme Court, in accordance with federal precedent, has consistently held that judicial findings of criminal history do not violate the Sixth Amendment. See *State v. Sullivan*, 307 Kan. 697, 708, 414 P.3d 737 (2018) (reaffirming this position). Thus, since section 10 encompasses section 5's jury trial right and section 10 provides the same protection as the Sixth Amendment, it is a reasonable inference that section 5's jury trial right is also interpreted the same as the Sixth Amendment to the United States Constitution.

In sum, Kansas caselaw supports the *Valentine* court's conclusion that section 5 provides protection similar to, not greater than, the federal jury trial right. In addition, Albano's argument—that the sentencing court's judicial findings of prior convictions under the KSGA violates section 5 of the Kansas Constitution—can be more definitively resolved by applying a section 5 analysis.

*The section 5 jury trial right does not prohibit judicial findings of prior criminal history because there was no common law right to have a jury determine criminal history when the Kansas Constitution was adopted.*

In considering a section 5 challenge, the court engages in a two part analysis, asking: (1) "In what types of cases is a party entitled to a jury trial as a matter of right?"; and (2) "when such a right exists, what does the right protect?" *Love*, 305 Kan. at 735.

Under the first prong of the analysis, a criminal prosecution is the type of case in which a defendant is entitled to a jury trial as a matter of right. 305 Kan. at 736. But in addressing the second question, the jury trial right in section 5 "'applies no further than to give the right of such trial upon issues of fact so tried at common law.'" 305 Kan. at 735.

15

As shown below, determining a defendant's criminal history was not a fundamental part of the criminal jury trial right at common law and is thus, not required by section 5.

Albano relies on cases cited in Justice Thomas' concurrence in *Apprendi*, 530 U.S. at 500-01 (Thomas, J., concurring), to establish that at common law, the jury needed to determine prior convictions to impose enhanced sentences. In his concurrence, Justice Thomas advocated for a broader rule than that announced by the majority: that any fact, including a prior conviction, used to increase punishment is an element of the crime that must be proven to a jury. In presenting his concurrence, Justice Thomas cites multiple cases that Albano argues "show[] that, when the Kansas Constitution was enacted, criminal defendants had a common law right to a jury trial on . . . prior conviction findings." Albano specifically relies on two of those cases in her brief to support her contention that the common law required a jury to make criminal history findings.

First, Albano relies on Justice Thomas' citation to an excerpt from an 1854 Massachusetts Supreme Judicial Court case, which stated:

> "When the statute imposes a higher penalty upon a second and a third conviction, respectively, it makes the prior conviction of a similar offence a part of the description and character of the offence intended to be punished; and therefore the fact of such prior conviction must be charged, as well as proved. It is essential to an indictment, that the facts constituting the offence intended to be punished should be averred. This is required by a rule of the common law, and by our own Declaration of Rights, art. 12." *Tuttle v. Commonwealth*, 68 Mass. 505, 506 (1854).

But upon closer examination of *Tuttle*, the case was not necessarily challenging findings of previous criminal history at sentencing. Instead, in *Tuttle*, the defendant was charged with and convicted of three counts of violating a liquor law but the sentences:

16

"were passed in the same manner as if there had been three distinct convictions, upon three several indictments; the first charging the defendant with a single act of selling . . . the second charging him with a single act of selling, he having been previously once convicted of a like offence; the third charging him with a single act of selling, he having been twice previously convicted of a like offence." 68 Mass. at 506.

The Massachusetts Supreme Judicial Court found that the second offense and third offense violation penalties could not be imposed because the defendant was not charged in the indictment with a second and third offense. 68 Mass. at 507. Although the Massachusetts Supreme Court cited the "common law" to support its conclusion, there is no further explanation of what common law rule it is relying on. It appears that the court in *Tuttle* was relying on a common law rule related to indictments: "*It is essential to an indictment*, that the facts constituting the offence intended to be punished should be averred. This is required by a rule of the common law." (Emphasis added.) 68 Mass. at 506. Thus, *Tuttle* provides little support for Albano's argument that there was a common law rule requiring juries to find prior convictions.

Second, Albano cites an 1859 case in which the Georgia Supreme Court held that the trial court erred in instructing the jury that it need not find whether the defendant was previously convicted of another offense when the indictment charged him with unlawfully selling alcohol as a second offense. *Hines v. State*, 26 Ga. 614, 616 (1859). The Georgia Supreme Court held that the district court erred because whether the defendant was previously convicted of the same offense was a proper question for the jury. 26 Ga. at 616. Notably, the Georgia Supreme Court does not mention that it is relying on a common law principle for its finding, it simply concludes, without further explanation, that such a question was a matter for the jury. Thus, this case also does not establish that there was a common law rule requiring juries to make such determinations.

Moreover, to the extent that Albano relies on Justice Thomas' assertion that prior convictions had to be found by a jury at common law, any such rule is not binding

17

precedent as it is in a concurrence and unsupported by the rule announced by the majority, which excepted prior convictions out of the rule requiring juries to finding sentencing facts. See *Maryland v. Wilson*, 519 U.S. 408, 412, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997) (stating that statement in concurrence does not constitute binding precedent). Additionally, as pointed out by the dissent in *Apprendi*, and explained above, the cases relied on by Justice Thomas at best

> "might reveal . . . the way American state courts resolved questions regarding the distinction between a crime and its punishment under general rules of criminal pleading or their own state constitutions, [but] *the decisions fail to demonstrate any settled understanding with respect to the definition of a crime under the relevant, pre-existing common law.*" (Emphasis added.) 530 U.S. at 528 (O'Connor, J., dissenting).

The dissent in *Apprendi* then stated:

> "An examination of the decisions cited by Justice THOMAS makes clear that they did not involve a simple application of a long-settled common-law rule that any fact that increases punishment must constitute an offense element. That would have been unlikely, for there does not appear to have been any such common-law rule. The most relevant common-law principles in this area were that an indictment must charge the elements of the relevant offense and must do so with certainty. . . .
> "Justice THOMAS is correct to note that American courts in the 19th century came to confront this question in their cases, and often treated facts that served to increase punishment as elements of the relevant statutory offenses. To the extent Justice THOMAS' broader rule can be drawn from those decisions, the rule was one of those courts' own invention, and not a previously existing rule that would have been 'codified' by the ratification of the Fifth and Sixth Amendments. Few of the decisions cited by Justice THOMAS indicate a reliance on pre-existing common-law principles. [Citations omitted.]" 530 U.S. at 528-29 (O'Connor, J., dissenting).

Albano's proposition that such a common law right existed carries even less weight given the United States Supreme Court's long acceptance of recidivist laws. The

United States Supreme Court has continually recognized that allowing a judge to consider prior convictions at sentencing "is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." *Almendarez-Torres v. United States*, 523 U.S. 224, 243, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998). In fact, the Court acknowledged that recidivist laws "have a long tradition in this country . . . dat[ing] back to colonial times" and "a charge under a recidivism statute does not state a separate offense, but goes to punishment only." *Parke v. Raley*, 506 U.S. 20, 26-27, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992). Thus, there is authority supporting the converse of Albano's proposition:  that judges historically could find prior convictions because prior convictions were not a separate offense that needed to be proved to a jury.

The above authorities suggest that at best there was a historical split on whether prior convictions must be proven to a jury. The two state court cases cited by Albano found that the question of prior convictions was one for the jury while the United States Supreme Court recognized that other states found that it was historically a question for the judge. Neither side definitively identifies an established common law rule about who needed to make such findings. Thus, Albano has not supported and cannot support the contention—that there was a common law rule that a jury must find criminal history— that her section 5 challenge depends on.

Early in our state's history, the Kansas Supreme Court recognized this split of authority and declined to find that a jury must find prior convictions. In a 1928 case, the Kansas Supreme Court addressed a defendant's challenge to his sentence, which was double the usual sentence for his conviction, under the 1927 habitual offenders' act. *State v. Woodman*, 127 Kan. 166, 272 P. 132 (1928). The defendant argued that his prior felony conviction should have been charged and proved if he was to be sentenced under the act. The Kansas Supreme Court recognized that "[t]here is a contrariety of judicial opinion as to the necessity for such allegation." 127 Kan. at 172. It then explained:

19

"Our statute of 1927 does not create a new offense. It merely prescribes a greater penalty for one who is convicted a second time of the commission of a felony and a still greater penalty for one who is convicted of a felony for the third time. To make his defense to a criminal charge all the accused needs to know is the nature of the crime charged against him and the names of the witnesses with whom he will be confronted in a prosecution therefor. *In this state it is no concern of the jury what the penalty for a crime may be, and it is just as well that the jurors' minds should not be diverted from the question of defendant's innocence or guilt by facts concerning defendant's prior convictions of other felonies.* It is also fairer to defendant to keep such matters entirely away from the jury. After conviction, however, and before the allocution, the defendant should be timely apprised that a sentence under the act of 1927 will be demanded against him, so that he may show cause, if he can, why such higher penalty should not be imposed." (Emphasis added.) 127 Kan. at 172.

While *Woodman* did not specifically address whether the Kansas Constitution required a jury to determine a defendant's criminal history, a later Kansas case did. In *Levell v. Simpson*, 142 Kan. 892, 52 P.2d 372 (1935), the defendant challenged his sentence under the habitual offenders' act, arguing that he had a right under the state and federal constitutions to have a jury determine whether he had prior convictions. The Kansas Supreme Court definitively stated that "[the defendant] had no such privilege under Kansas law." 142 Kan. at 894. Like Albano, the defendant in *Levell* cited caselaw from other jurisdictions stating that a jury had to find prior convictions. The Kansas Supreme Court easily discounted those decisions, stating:

"Those [decisions] could only be helpful if the question were new and undecided in this jurisdiction. Moreover, we find that with scarcely an exception those decisions were based upon statutes which expressly prescribe the procedural method for ascertaining the fact of the prisoner's prior conviction of one or more felonies." 142 Kan. at 894-95.

Our Supreme Court in *Levell* reiterated that "[i]n this state . . . the punishment for crime is something with which the jury has no concern except under the recent statute

20

providing for capital punishment in homicide cases. The function of a jury is to determine the innocence or guilt of the accused." 142 Kan. at 896.

The above collection of authority is fatal to Albano's section 5 argument. These cases establish that (1) historically, there was a split in authority regard whether a jury must find prior convictions and so there was no common law right to have a jury make such determinations when the Kansas Constitution was adopted, and (2) Kansas' position has always been that, under the state constitution, a defendant does not have a right to have a jury determine prior convictions for sentencing purposes. Section 5's jury trial right "'applies no further than to give the right of such trial upon issues of fact so tried at common law.'" *Love*, 305 Kan. at 735. Because Albano has not shown that there is a common law right to have a jury determine criminal history, section 5 does not prohibit the KSGA's use of judicial findings of criminal history.

Affirmed.