NOT DESIGNATED FOR PUBLICATION

No. 125,933

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARVIN WILLARD POULSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Submitted without oral argument. Opinion filed January 17, 2025. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Njeri Mwangi*, deputy district attorney, *Mark A. Dupree Sr.*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER and COBLE, JJ.

PER CURIAM:  Marvin Willard Poulson appeals his jury conviction of one count of rape and one count of criminal restraint in Wyandotte County. The district court imposed a controlling 253-month prison sentence. On appeal, Poulson raises multiple issues, including claimed jurisdictional and statutory errors and multiple jury instructional errors at trial. For the reasons to be fully explained below, we find the district court had jurisdiction over Poulson's case, we find no clear error in the district court's actions, and we affirm Poulson's conviction.

1

After an incident in July 2019, the State charged Poulson with two counts of rape under K.S.A. 2019 Supp. 21-5503(a)(1)(A) and one count of criminal restraint under K.S.A. 2019 Supp. 21-5411. Much of the narrative was given through witness testimony at the jury trial almost three years later.

*The victim recounts her story.*

The victim, Jane Doe, (identified here by a pseudonym) testified she knew Poulson through his girlfriend, Mary Roe (also identified by a pseudonym), whom Jane had known for years. Jane moved into Poulson and Mary's home in June 2019 because her then-boyfriend had been arrested, and she needed a place to stay. Multiple other people also lived in the home at the time. After about a week, Jane decided to leave because she felt awkward there, as Poulson started to get angry when she would go places, and he wanted her to check in with him when she would leave. Jane left Poulson's home around July 4, 2019, and went to stay with her son.

After Jane left, she received several calls from Poulson asking her to come by to talk about something. Poulson did not specify why he wanted to meet, but he knew Jane needed money and told her he knew a way she could make some money. Late afternoon on July 11, 2019, Poulson told Jane he would give her gas money to go see her boyfriend in jail, so she went to Poulson's house to meet him. Jane went into the house through the back door, as was common for those familiar with the home, to avoid bothering Mary's mother in the living room and walked towards Poulson's room, located in the back of the home in the garage.

When Jane entered the room, she saw Poulson sitting on the bed and there were no other chairs in the room. She sat down next to Poulson on the bed, and he started

2

grabbing her and rubbing her back. Jane told him, "[N]o" and that it was not right because she had a boyfriend. She started to get up, but Poulson pushed her back onto the bed with his arms. He started to pull her clothes off, keeping his forearm across her chest while trying to kiss her. Jane continued to tell him no, but Poulson managed to get her shorts off. She tried to jump up and get away, but Poulson was blocking the end of the bed with his body. Poulson was masturbating while trying to keep her on the bed and trying to shove his hands inside her. Jane tried to block him with her hand and kept telling him no, but he managed to insert his hand into her vagina. Poulson then penetrated Jane's vagina with his penis, telling her that he would quit if she would "come." Jane told him he disgusted her and repeatedly told him to stop. At some point, Poulson stopped and got off the top of her and told Jane that this was just between them. Jane agreed, grabbed her clothes, and left. According to Jane, the whole incident lasted about 20-30 minutes.

Jane did not recall seeing anyone else in the house. She exited through the back door and ran to her truck. She parked her vehicle behind a dumpster in a McDonald's parking lot, called the police, and met them where she was parked. The police offered her EMS treatment, but she declined to take the ambulance and went voluntarily to the hospital, where she underwent a rape exam.

*Other State witnesses corroborate the victim's story.*

During trial, the State presented various witnesses to corroborate Jane's story. One such witness, a forensic nurse named Katie Jo Allen, testified about performing the sexual assault exam on Jane. Allen noted that during her visual exam of Jane's vaginal area, she saw small red dots and the area was swollen and tender. She also observed tears consistent with a mounting injury, such as where a male would be on top of a female. On cross-examination, Allen agreed the same injuries could be from consensual sex or self-masturbation.

3

The State also called Jennifer Solado, a forensic scientist with the Kansas Bureau of Investigation (KBI). Solado testified that she received the sexual assault kit and completed the DNA analysis in this case. She also screened the kit for the presence of seminal fluid, which was identified on several swabs. Solado testified that the DNA profile from the seminal fluid on the cervical swabs was consistent with the known DNA profile of at least two individuals—Jane and Poulson. Solado also tested the swabs from Jane's breast and that DNA profile was a mixture of at least two individuals—Jane and Poulson. The last sample Solado tested was from Jane's neck swabs, and the DNA profile was again consistent with Jane and Poulson.

Detective Jefferson Jacobs was assigned to follow up with Jane about the incident. Jacobs also interviewed Poulson at his workplace. Detective Jacobs testified that Poulson initially denied any sexual contact with Jane and voluntarily provided a DNA sample. Poulson then called a few days after the initial interview and said he wanted to tell Detective Jacobs something, so the detective met Paulson at his workplace again. This time, Poulson told Detective Jacobs that he and Jane did partake in sexual activity by jointly masturbating. Poulson denied any penetration took place, and told Detective Jacobs he suffered from erectile dysfunction, but he did ejaculate on Jane after masturbating together.

Detective Jacobs later had a third interview with Poulson after receiving confirmation that Poulson's DNA was found in Jane's sexual assault kit. The detective told Poulson about the DNA and asked for an explanation. Poulson told him that he did put his fingers inside Jane while they were masturbating together, and that is the only explanation he could think of why his semen was found inside her. Poulson continued to deny putting his penis into Jane.

At the conclusion of the trial, the jury found Poulson guilty of Count I, rape by digital penetration, and Count III, criminal restraint. The jury did not reach a verdict on

Count II, rape by penile penetration. The district court sentenced Poulson to 253 months' imprisonment.

Poulson timely appeals.

THE DISTRICT COURT POSSESSED SUBJECT MATTER JURISDICTION

In his first argument before us, Poulson contends because K.S.A. 2019 Supp. 21-5109(a) does not allow the State to bring two rape charges stemming from a single incident, the district court did not have subject matter jurisdiction over the two rape charges in Counts I and II. He emphasizes this is not a multiplicity issue, despite utilizing the multiplicity "factor test" in his argument.

Whether jurisdiction exists is a question of law, subject to unlimited appellate review. *State v. Hillard*, 315 Kan. 732, 775, 511 P.3d 883 (2022). A question of subject matter jurisdiction may be raised at any time, whether for the first time on appeal or even on the appellate court's own motion. *State v. Clark*, 313 Kan. 556, 560, 486 P.3d 591 (2021). And to the extent we examine related statutes, statutory interpretation presents a question of law over which we exercise unlimited review. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022).

First, Poulson cites K.S.A. 2019 Supp. 21-5109(a)—the law addressing multiple prosecutions for the same act—to show the State cannot prosecute multiple charges of the same crime from a single incident. He argues the two counts of rape—one by means of digital penetration and another by penile penetration—resulted from the same conduct, so the State ultimately charged the same crime twice. Poulson then claims that because the State did not have the statutory authority to prosecute him for both rape charges, the district court lacked jurisdiction over both charges. Finally, Poulson alleges that harmless error does not apply here because both charges are void, due to the State's error in

5

prosecuting them, and the district court did not have subject matter jurisdiction from the start.

Poulson relies on our Supreme Court's holding in *State v. Mincey*, 265 Kan. 257, 963 P.2d 403 (1998). There, our Supreme Court held K.S.A. 21-3107(1), now codified with identical language at K.S.A. 21-5109(a), allows the State to prosecute multiple offenses from the same conduct if the conduct violates multiple criminal codes, but it simultaneously forbids the prosecution to "split a single offense into separate parts where there is a single wrongful act which does not furnish the basis for more than one criminal prosecution." 265 Kan. at 262. Poulson asserts since both rape charges were factually and elementally the same crime, only one crime was committed, and the State erred by charging what amounts to the same crime twice. And because the State was not allowed to prosecute the rape charges separately under K.S.A. 2019 Supp. 21-5109(a), he claims this amounts to jurisdictional error.

We disagree with Poulson's conclusion. Certainly, the State has the authority to prosecute under K.S.A. 2019 Supp. 21-5109(a), and the statute also prohibits multiple charges for the same crime. But Poulson's wholesale reliance on *Mincey* for his jurisdictional argument is misplaced.

In *Mincey*, our Supreme Court was not addressing the splitting of a single offense as a jurisdictional defect, but as a defect in the charging document and a multiplicity issue. 265 Kan. at 262-63. Here, despite outlining the questions courts ask when examining a multiplicity issue, Poulson makes quite clear he "wants this [c]ourt to know that this is *not* a multiplicity issue" and instead tries to transform this into a jurisdictional defect. (Emphasis added.) He also argues "a conviction obtained in a court without subject matter jurisdiction is void." *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016). But his efforts to convert this charging document problem into a jurisdictional defect fail, and our courts have previously rebuffed such attempts.

6

Try as he might to dress this up as anything but—the error Poulson claims here is a procedural error in the prosecution; that is, a defect in the charging document. Poulson argues the State prosecuted two separate charges from a single wrongful act, but this would amount to a deficient complaint. And as discussed below, our Supreme Court confirmed in *Dunn* that a defective complaint does not raise a question of subject matter jurisdiction.

True, before our Supreme Court's decision in *Dunn*, the question of whether a criminal complaint was defective was considered to raise a question of subject matter jurisdiction. See, e.g., *State v. Rivera*, 48 Kan. App. 2d 417, 451, 291 P.3d 512 (2012) (examining in part whether a complaint was sufficient to confer subject matter jurisdiction on the district court). However, the appellate courts reviewed the adequacy of the charging document using different standards based upon whether the issue was raised before the trial court or for the first time on appeal. Cf. *State v. Hurd*, 298 Kan. 555, 565, 316 P.3d 696 (2013) (if the complaint omits an essential element it deprives the court of subject matter jurisdiction to convict the defendant); *State v. Portillo*, 294 Kan. 242, 254-55, 274 P.3d 640 (2012) (when raised for the first time on appeal, the claimed defect must have [a] prejudiced the defendant in preparation of defense; [b] impaired defendant's ability to plead the conviction in a subsequent prosecution; or [c] limited the defendant's constitutional right to a fair trial).

Then, in *Dunn*, the Supreme Court reversed a long line of precedent and found that deficiencies in an indictment, complaint, or information did not remove subject matter jurisdiction over criminal cases in the district or appellate courts. Instead, it found subject matter jurisdiction is extended to the courts by the Kansas Constitution. *Dunn*, 304 Kan. at 810-11. This principle was echoed in our court's decision in *State v. Bird*, 59 Kan. App. 2d 379, 395, 482 P.3d 1157 (2021), stating subject matter jurisdiction is bestowed to the courts by the Kansas Constitution and deficient charging documents do not remove subject matter jurisdiction over criminal cases from the district or appellate courts. Our

court has likewise held that charging documents do not establish subject matter jurisdiction but merely invoke it. *State v. Pollman*, 56 Kan. App. 2d 1015, 1028, 441 P.3d 511 (2019). The State must properly invoke subject matter jurisdiction through a charging document, and when the charging document is statutorily insufficient, as Poulson claims here, the problem is not a substantive absence of the court's jurisdiction but instead a procedural failure by the State to demonstrate its existence. *State v. Jordan*, 317 Kan. 628, 642, 537 P.3d 443 (2023) (citing *Dunn*, 304 Kan. at 812.).

In *Dunn*, the court recognized three types of charging-document defects, but made clear none of these defects prevent a district court's subject matter jurisdiction over a criminal case. 304 Kan. at 815-16. Here, Poulson's argument falls under the second category of defect recognized in *Dunn*: that is, whether the State's charging document alleges facts that show the commission of two separate rape charges. *Dunn*, 304 Kan. at 815-16; see *Mincey*, 265 Kan. at 265 (K.S.A. 21-3107[1], now codified as K.S.A. 21-5109[a], prohibits multiple charges of the same crime in the complaint.). This type of defect, while not a jurisdictional defect, qualifies as a statutory error, and to remedy such an error, the State is "limited to arguing lack of preservation of the issue . . . or harmlessness under K.S.A. 2015 Supp. 60-261 and K.S.A. 60-2105." *Dunn*, 304 Kan. at 817.

Poulson has repeatedly expressed that his argument on appeal is not one of a defective charging document nor is it a multiplicity issue. As he chose not to address these questions on appeal, those arguments are deemed waived or abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). As a result, because we have established that this claim does not involve subject matter jurisdiction, we may decline further review of this issue.

But pressing forward, we note that under K.S.A. 2019 Supp. 60-261 and K.S.A. 60-2105, even if an error were present in the information, we examine whether any defect

in the charging document affected Poulson's substantial rights and have no trouble concluding it did not. If we accept his argument and find Poulson could legally have been charged and convicted of only one count of rape under K.S.A. 2019 Supp. 21-5503(a)(1)(A), despite being erroneously charged with two counts of rape, he was ultimately only convicted and sentenced on one of those counts. Thus, even if the State erred in its initial charging, we see no way in which Poulson's substantial rights were affected.

POULSON'S SECTION 5 ARGUMENT IS UNPRESERVED

Poulson next argues that his common-law jury trial right under section 5 of the Kansas Constitution Bill of Rights was violated because the district court's rape jury instruction Nos. 5 and 6, which were based on K.S.A. 2019 Supp. 21-5503(a)(1)(A), failed to apply "knowingly" to every element of the crimes. These jury instructions were essentially identical, aside from instruction No. 5 referencing "penetration of the female sex organ by a finger" and No. 6 referencing "penetration of the female sex organ by a male sex organ" and they read as follows:

"The defendant is charged in Count [I and II] with the crime of rape. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
"1. The defendant knowingly engaged in sexual intercourse with [Jane].
"2. [Jane] did not consent to sexual intercourse.
"3. The sexual intercourse occurred under circumstances when [Jane] was overcome by force or fear.
"4. That this act occurred on or about the 11th day of July, 2019, in Wyandotte County, Kansas.
"A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about.
"It is not a defense that the defendant did not know or have reason to know that [Jane] did not consent to the sexual intercourse.

9

"Sexual intercourse means any penetration of the female sex organ by a [male sex organ] [finger]. Any penetration, however slight, is sufficient to constitute sexual intercourse."

Because the jury must conclude every element of the alleged crime has been met to find him guilty, as guaranteed by section 5 of the Kansas Constitution Bill of Rights, Poulson claims the omission of "knowingly" from each element of the crime violated the Kansas Constitution. He asserts this error is effectively a structural error that requires reversal. Poulson clarifies that he is not presenting this argument as a jury instruction issue, but as a challenge to K.S.A. 2019 Supp. 21-5503(a)(1)(A).

*Applicable Legal Principles*

Because Poulson is, in a roundabout way, challenging the statute underlying the jury instructions, we consider the constitutionality of a statute as a legal question reviewed de novo. When a case deals with "'fundamental interests'" protected by the Kansas Constitution, no presumption of constitutionality applies to the challenged statutes. *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1132, 442 P.3d 509 (2019). The right to a jury trial protected by section 5 of the Kansas Constitution Bill of Rights is a "'fundamental interest,'" so no presumption of constitutionality applies to challenges brought under section 5. 309 Kan. at 1133.

*Preservation*

Generally, constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Pearce*, 314 Kan. 475, 484, 500 P.3d 528 (2021). But there are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including where: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the

10

ends of justice or to prevent denial of fundamental rights; and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021).

Poulson concedes he did not raise this challenge before the district court and is raising the issue for the first time on appeal. He claims his argument meets the first and second exceptions to the rule and so we should review his claim on appeal despite his failure to preserve it. First, he maintains there are no facts in dispute and no additional facts are needed for us to resolve this issue as a question of law, fully determinative of this appeal. Second, he argues that his appeal involves consideration of his fundamental right to a jury trial.

Our Supreme Court has held that a right to a jury trial under section 5 of the Kansas Constitution Bill of Rights is a fundamental right and reviewed the merits of such claims under the second exception. *State v. Robinson*, 314 Kan. 245, 248, 496 P.3d 892 (2021). And our court considered an unpreserved section 5 issue in *State v. Albano*, 58 Kan. App. 2d 117, 125, 464 P.3d 332 (2020).

But the same court has also elected not to apply the preservation exceptions to novel and consequential issues alleging violations of section 5, even if they were applicable. *State v. Huggins*, 319 Kan. 358, 362, 554 P.3d 661 (2024). Most recently, in *Huggins,* our Supreme Court declined review of the unpreserved section 5 issue, holding that "argument to and analysis from the district court would have been helpful." 319 Kan. at 362.

As our Supreme Court explained in *Huggins* and in *State v. Gray*, our decision to review an unpreserved claim under the exception is a prudential one, and even if one of the exceptions were satisfied, this court is under no obligation to review the newly-asserted claim. *Huggins,* 319 Kan. at 362; *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165, 170 (2020) (declining to reach an unpreserved claim and finding the failure to

11

present the argument to the district court "deprived the trial judge of the opportunity to address the issue in the context of this case and such an analysis would have benefitted our review"). We similarly decline to reach this unpreserved constitutional claim.

THE RAPE JURY INSTRUCTIONS WERE NOT CLEARLY ERRONEOUS

In the alternative to his section 5 constitutional argument, Poulson contends if we do not find in his favor on that argument, the district court still erred because the two rape instructions described above were legally inappropriate in three different ways. First, he again argues the element of "knowingly" in K.S.A. 2019 Supp. 21-5503(a)(1)(A) should have been applied to all elements of the crimes. He then claims the district court erred by not properly defining the term "knowingly" in the jury instructions. Finally, he argues, in correlation to his first argument, that K.S.A. 2019 Supp. 21-5503(e)—which was also a part of the instructions and provides "it shall not be a defense that the offender did not know or have reason to know that the victim did not consent to the sexual intercourse"— violates the federal constitution and so the jury instruction based on this statute is erroneous. We find none of these arguments convincing, because he has not shown clear error.

*Applicable Legal Principles*

When analyzing jury instruction issues, appellate courts follow a three-step process: (1) determining whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, in other words, whether the error can be deemed harmless. *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021); see K.S.A. 2023 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires

12

to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous.").

At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record. *Holley*, 313 Kan. at 254. In determining whether an instruction was factually appropriate, courts must determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. 313 Kan. at 255.

Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step. 313 Kan. at 254. When a party asserts an instruction error for the first time on appeal, the failure to give a legally and factually appropriate instruction is reversible only if the failure was clearly erroneous. K.S.A. 2023 Supp. 22-3414(3); see *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018). For a jury instruction to be clearly erroneous, the court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. *State v. Shields*, 315 Kan. 814, 823-24, 511 P.3d 931 (2022). The party claiming error has the burden to show clear error. *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021); see K.S.A. 2023 Supp. 22-3414(3). The "clearly erroneous" principle is not a standard of review, or a framework for determining whether error occurred. Instead, it supplies a basis for determining whether an error requires reversal of a conviction. *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012); see *State v. Lewis*, 299 Kan. 828, 856, 326 P.3d 387 (2014).

Poulson concedes, and the State agrees, he did not object to these two jury instructions at trial. As a result, even if we were to find the jury instructions legally inappropriate—by failing to apply "knowingly" to all elements, failing to properly define the term, or improperly utilizing the language of K.S.A. 2019 Supp. 21-5503(e)—then we

13

must determine whether this failure amounted to clear error. See *Crosby*, 312 Kan. at 639.

*Poulson does not demonstrate clear error.*

As for the legality of the instructions, Poulson does not argue that the State prosecuted him using the wrong statute or that the language of the instructions was different from the Kansas Pattern Instructions (PIK). Poulson first recycles his section 5 constitutional arguments to claim that the rape jury instructions for Counts I and II were erroneous. Poulson claims both jury instructions were legally inappropriate because the element of "knowingly" in K.S.A. 2019 Supp. 21-5503(a)(1)(A) must apply to all elements of the crime. He insists since the jury instructions did not tell the jury it must find that Poulson knew Jane did not consent and knew that she was overcome by force or fear, the instructions were erroneous.

Poulson then argues that the district court failed to properly define the term "knowingly" in the jury instructions. He argues the instructions given omitted the "result" portion of the definition of "knowingly" and included only the "conduct" portion. The relevant portion of the instructions read:  "A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about." Poulson believes the instruction should have read:  "A defendant acts knowingly when the defendant is aware of the nature of his conduct *and when he is aware that his conduct is reasonably certain to cause the result*." (Emphasis added.) Because the instructions omitted the "result" component of "knowingly," he argues they were not legally appropriate.

Similarly, he claims that, although the instructions' segment reading:  "It is not a defense that the defendant did not know or have reason to know that [Jane] did not

14

consent to the sexual intercourse" is taken from K.S.A. 2019 Supp. 21-5503(e), Poulson still maintains it was not legally appropriate.

We need not dwell on the legality of the instructions, though, because as explained below, Poulson has not convinced us of clear error. Our Supreme Court has held that the pattern jury instruction on which these challenged instructions were based, PIK Crim. 4th 55.030, mirrors the Kansas rape statute, K.S.A. 2019 Supp. 21-5503(a)(1)(A), and the jury instructions derived from it are, mostly likely, legally appropriate. *State v. Thomas*, 313 Kan. 660, 662-63, 488 P.3d 517 (2021). And Poulson makes no argument that the instructions were factually inappropriate. But regardless, it makes no difference to Poulson's case, because he does not convince us that any of the three alleged infractions reaches clear error.

Even if we were to find Poulson showed that the instructions were legally inappropriate in one of the above ways, he still bears the burden to demonstrate that reversal is warranted. Again, we must consider whether the district court's alleged instructions errors were clearly erroneous. *Butler*, 307 Kan. at 859. That is, we must be firmly convinced the jury would have reached a different verdict if the erroneous instructions had not been given. As the party claiming clear error, Poulson has the burden to show both error and prejudice. *Crosby*, 312 Kan. at 639.

Poulson claims these alleged instructional errors prejudiced him because his entire defense at trial was that the sexual intercourse was consensual. He insists that witnesses' testimony supported that he neither knew Jane did not consent to the sexual intercourse nor that she was overcome by fear or force.

As support, Poulson points to his roommates' testimony that neither of them heard any commotion during the alleged rape. His two roommates testified that they would have heard any struggle or if someone was being sexually assaulted in the house because

15

the house was very small, and the walls were thin. Both roommates stated they were at the house when the alleged rape occurred. Poulson's girlfriend, Mary, also testified that she felt Jane was trying to "hook up with" Poulson because Jane would evade her or stop talking to Poulson when she saw them together.

Poulson claims all this evidence cumulatively demonstrates Jane's consent and, consequently, he did not know that Jane did not consent or that she was overcome by force or fear. He reasons if the jury had been properly instructed, the evidence "could rationally lead" the jury to reach a different conclusion.

But this is not the standard Poulson is required to meet—his burden is much higher. To meet his burden to show clear error, Poulson must convince us that the jury *would have* reached a different verdict if not for the error. The jury heard the evidence from both parties, including the evidence from Poulson's roommates and girlfriend, and considered Poulson's defense that the sexual intercourse was consensual. So, the jury was already on notice that Poulson was claiming he did not know that Jane did not consent to the sexual intercourse. The jury weighed Poulson's defense against the instructions and still found Poulson guilty of rape on Count I. Thus, even if the jury was instructed that it must find Poulson knew Jane did not consent and that he knew she was overcome by force or fear, nothing in the record shows the jury would have found otherwise. As a result, Poulson fails to show clear error, so any jury instructional error does not warrant reversal of Poulson's conviction.

CUMULATIVE ERROR ANALYSIS DOES NOT APPLY

In his final argument, Poulson alleges that his conviction must be reversed, and the cases remanded for new trial because cumulative errors deprived him of a fair trial.

Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. *State v. Hirsh*, 310 Kan. 321, 345, 446 P.3d 472 (2019). Yet when an appellate court finds no errors exist, the cumulative error doctrine cannot apply. *State v. Lemmie*, 311 Kan. 439, 455, 462 P.3d 161 (2020). Even a single error cannot support reversal under the cumulative error doctrine. *State v. Ballou*, 310 Kan. 591, 617, 448 P.3d 479 (2019); see also *Butler*, 307 Kan. at 868 (citing both no error and single error rules).

We decline to address Poulson's unpreserved constitutional claim. And, because none of Poulson's claimed jury instructional errors were found to be clear errors, we cannot include them in a cumulative error analysis. *State v. Waldschmidt*, 318 Kan. 633, 634-35, 546 P.3d 716 (2024) (holding "unpreserved instructional issues that are not clearly erroneous may not be aggregated in a cumulative error analysis because K.S.A. 2022 Supp. 22-3414(3) limits a party's ability to claim them as error").

As a result, Poulson has failed to establish any errors capable of cumulating, and the cumulative error analysis does not apply.

Affirmed.