NOT DESIGNATED FOR PUBLICATION

No. 122,166

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER ALAN KREBBS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed November 5, 2021. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Kimberly A. Rodebaugh*, senior assistant district attorney, *Thomas R. Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., CLINE, J., and BURGESS, S.J.


PER CURIAM:  After the trial court denied his suppression motion, a jury convicted Christopher Alan Krebbs of distributing methamphetamine, possessing THC, and criminal possession of a firearm. Krebbs appeals his convictions, arguing that the trial court wrongly denied his motion requesting that it suppress all the incriminating evidence seized from his car shortly after his arrest. He contends that the trial court wrongly denied his suppression motion because law enforcement lacked probable cause both for his arrest and for the search of his car. Additionally, Krebbs challenges the trial court's reliance on his criminal history to enhance the severity of his underlying prison sentence. He argues

1

that section 5 of the Kansas Constitution Bill of Rights preserved his common-law jury trial right, and his common-law jury trial right prohibited the trial court from relying on his criminal history to enhance the severity of his prison sentence without first proving his criminal history to a jury beyond a reasonable doubt. Nevertheless, because numerous preservation issues stymie our ability to adequately consider Krebbs' appellate arguments, we decline consideration of his claims of error. As a result, we affirm the trial court's denial of Krebbs' suppression motion and the trial court's imposition of Krebbs' total controlling sentence of 154 months' imprisonment followed by 36 months' postrelease supervision.

FACTS

*The GPS Search Warrant*

On November 27, 2017, the Reno County trial court issued a search warrant, allowing members of the Drug Enforcement Unit (DEU) of the Reno County Sheriff's Office to place a global positioning system (GPS) tracking device on Krebbs' blue 2009 Ford Fusion. The trial court issued the search warrant based on the affidavit of Deputy Andrew Soule—a DEU member who asserted that there was probable cause to believe that Krebbs was distributing methamphetamine in Hutchinson, Kansas, that he had purchased in Wichita, Kansas.

In his affidavit, Deputy Soule explained that the DEU started investigating Krebbs after "receiv[ing] various pieces of information from several sources that [Krebbs] ha[d] been distributing ICE methamphetamine in Hutchinson . . . ." He then went on to discuss the specific information that the DEU had learned about Krebbs from four different sources. According to Deputy Soule's affidavit, those sources, as well as the information that those sources divulged about Krebbs distributing methamphetamine in Hutchinson, were as follows:

- Source One was a "potential Confidential Informant[,] who was seeking leniency" on pending Reno County "criminal charges" and who had also given the DEU "reliable information over the past month." This source told the DEU that "a man in Wichita was supplying [Krebbs]" with "at least one pound of methamphetamine" each time that Krebbs visited. This source further told the DEU that he had seen Krebbs "at [this Wichita] supplier's residence in the last two months";

- Source Two was a "confidential informant," who was "seeking leniency for pending cases." This source told the DEU that sometime after June 1, 2017, Krebbs "was selling methamphetamine and marijuana in large quantities";

- Source Three was a "person who was attempting to seek leniency for pending charges." When speaking to the DEU, this source "confirmed" Source Two's assertion that sometime after June 1, 2017, Krebbs was selling methamphetamine and marijuana in large quantities; and

- Source Four was a "[confidential informant]" for the United States Drug Enforcement Agency (DEA), who told DEA Agent Mike Silveira information about Krebbs, which Agent Silveira then told Deputy Soule about on November 20, 2017. This source told Agent Silveira that as he or she completed a control buy on October 25, 2017, within the Wichita home of Johnny Duncan—a person that the DEA believed was distributing methamphetamine within Wichita—a male driving a "blue Ford passenger car" arrived and then entered Duncan's home. This source told Agent Silveira that upon entering Duncan's home, Duncan introduced this man to him as Krebbs. Also, this source told Agent Silveira that before he left Duncan's home, he heard Duncan and Krebbs having a conversation about two people who had methamphetamine distribution charges pending against them in Reno County.

In addition to discussing the information that the DEU had learned from the four sources, in his GPS search warrant affidavit, Deputy Soule noted that the DEA had been monitoring Duncan's phone calls. After noting this, he suggested that the DEA had given the DEU information establishing that Krebbs and Duncan "were in telephone contact with each other 71 times" between September 28, 2017, and October 26, 2017.

Finally, in his GPS search warrant affidavit, Deputy Soule asserted that the GPS search warrant was necessary because a GPS tracker would help the DEU investigate Krebbs as a potential methamphetamine distributor. He noted that Krebbs lived in a "remote location" that was difficult for the DEU to physically survey without detection. He also noted that drug distributors often drive erratically to avoid physical surveillance. He thus alleged that the GPS tracker would help the DEU's investigation by allowing the DEU's members to monitor Krebbs at his rural house and to follow Krebbs even if he engaged in counter surveillance.

*The GPS Investigation*

After the trial court issued the GPS search warrant on November 27, 2017, the DEU had 15 days to install the GPS tracker on Krebbs' car. But the DEU was unable to install the GPS tracker on Krebbs' car within 15 days. As a result, Deputy Soule submitted a second affidavit to the trial court in which he requested a 15-day extension for the DEU to install the GPS tracker on Krebbs' car. In the end, on December 17, 2017, just four days after the trial court granted Deputy Soule's extension request, the DEU was able to install the GPS tracker on Krebbs' car.

Afterwards, the DEU continued to monitor Krebbs by both physical and GPS surveillance for the next few weeks. During that time, the DEU tracked Krebbs as he took two trips from Hutchinson to Wichita. The first trip was on December 21, 2017. Meanwhile, the second trip was on January 10, 2018. Also, it was as Krebbs was driving

4

back to Hutchinson from Wichita following his second Wichita trip on January 10, 2018, that Deputy Soule had Krebbs arrested.

It is undisputed that the evening of January 10, 2018, Deputy Soule had been monitoring Krebbs' speed and location through the computer application associated with the GPS tracking device installed on Krebbs' car. When Deputy Soule realized via the GPS tracker computer application that Krebbs had reentered Reno County from Sedgwick County while speeding, he contacted Patrol Deputy Jack Trussell, who was nearby Krebbs' purported location, and told him to stop Krebbs' car. Shortly after receiving Deputy Soule's request, Patrol Deputy Trussell saw and then stopped Krebbs' car "just south of K-96 on Worthington Road . . . ." As Patrol Deputy Trussell approached Krebbs' car, he asked the driver, who turned out to be Krebbs, to exit his car before placing Krebbs "in custody." Not long after this, Deputy Soule as well as other DEU members arrived at the location of Krebbs' stopped car and started searching it.

During the ensuing search of Krebbs' car, Deputy Soule and the other DEU members found a handgun, several marijuana cigarettes, two glass pipes, and about a pound of methamphetamine. According to Krebbs' arrest report, which Deputy Soule completed the day of Krebbs' arrest, the DEU located the methamphetamine inside a large bundle. This bundle was inside Krebbs' glovebox. Deputy Soule also reported that after reading Krebbs his *Miranda* rights, Krebbs told him that this large bundle contained "dope" and that "he knew he was not supposed to have a handgun because of a [prior] felony conviction."

Also, according to the narrative affidavit Deputy Soule wrote within Krebbs' arrest report, the following information provided the DEU with probable cause to stop and then arrest Krebbs before searching his car:

5

"On January 10, 2018[,] DEU officers were conducting surveillance on . . . Krebbs. During the previous investigation[,] the officers learned [that Krebbs] was traveling to Wichita to purchase methamphetamine to distribute in Hutchinson, Reno County, Kansas. On today's date[, Krebbs] traveled to [a specific address on] Waverly Street in Wichita. According to officers with the DEA[,] this [was] the residence of Nicholas Depetris. [Depetris was] known by them to be involved with . . . Duncan[,] a known methamphetamine dealer in Wichita. During a previous trip to Wichita[, Krebbs] met with someone driving a vehicle registered to . . . Depetris. Officers received word after the previous trip that [Krebbs] had picked up methamphetamine on that trip to distribute. After leaving the residence on Waverly[, Krebbs] made a stop at *Town West Square Mall* in Wichita and purchased some items. [Krebbs] left from the mall and proceeded back to Reno County. Once [Krebbs] arrived in Reno County[,] Officers made a traffic stop on [Krebbs'] vehicle at K96 and Worthington Road." (Emphasis added.)

Several days after his arrest, on January 16, 2018, the State charged Krebbs with distribution of methamphetamine, a severity level 1 drug felony in violation of K.S.A. 2017 Supp. 21-5705(a)(1), possession of marijuana, a class B misdemeanor in violation of K.S.A. 2017 Supp. 21-5706(b)(3), and criminal possession of a firearm, a severity level 8 nonperson felony in violation of K.S.A. 2017 Supp. 21-6304(a)(3)(A). Of note, in support of its charges against Krebbs, the State attached Deputy Soule's January 11, 2018 sworn affidavit, which included a probable cause explanation by Deputy Soule that was substantively identical to the probable cause explanation that Deputy Soule wrote within the narrative affidavit portion of Krebbs' arrest report the day prior.

Nevertheless, on January 23, 2018, the State filed a new affidavit from Deputy Soule to support its charges against Krebbs. In this new affidavit, which Deputy Soule swore to on January 22, 2018, Deputy Soule included a probable cause explanation that was substantively identical to the probable cause explanation that he included within Krebbs' January 10, 2018 arrest report and within his January 11, 2018 sworn affidavit *except for the following language that Deputy Soule now included about Krebbs' behavior preceding his first trip to Wichita on December 21, 2017*:

6

"Prior to going to Wichita on this trip, [Krebbs] made several short term stops at addresses in Hutchinson. After returning to Hutchinson, he stopped at several of the same locations. Based on my training and experience, I know it is common for dealers of controlled substances to collect money prior to getting re-supplied. Once re-supplied, I know it is common for the suppliers to visit the locations again . . . and drop off the controlled substances."

*Suppression Proceedings*

Eventually, Krebbs moved to suppress all the physical items seized from his car as well as the incriminating statements that he made to Deputy Soule after being Mirandized as fruits of the poisonous tree of the DEU's warrantless and illegal search of his car. In this motion, Krebbs asserted that the DEU's search of his car was not supported by probable cause for the following reasons:  (1) because the DEU's investigation of him leading up to his arrest did not support a reasonable belief that he was a methamphetamine distributor; (2) because none of the illegal items ultimately found inside his car were in plain view when Patrol Deputy Trussell approached his car and then immediately arrested him; (3) because no exigent circumstances justified the application of the automobile exception to the search warrant requirement under the facts of his case; and (4) because under the assumption that he was speeding, his speeding did not give the DEU probable cause to search his car.

Significantly, as for his first suppression argument, Krebbs largely complained about Deputy's Soule's probable cause explanations. He argued that "[t]he information provided in [Deputy] Soule's affidavit and narrative report" failed to establish that the DEU had probable cause to search his car immediately following his arrest. He alleged that "[Deputy Soule] padded his narrative with information gathered on a different day of following [him], blurring dates a little to obscure the fact that the driving patterns [that Deputy Soule] witnessed on an earlier day that [he] deemed consistent with drug distribution did NOT occur on the day of [his] arrest." He alleged that from Deputy

Soule's probable cause explanations, it was unclear why Deputy Soule or the other DEU members decided that he was a methamphetamine distributor during the "previous investigation." He additionally noted that from Deputy Soule's probable cause explanations, it was unclear whether any person from any law enforcement agency actually saw him at or inside Depetris' address during the hours shortly before his arrest the evening of January 10, 2018. Lastly, he stressed that nothing within Deputy Soule's probable cause explanations indicated that there was any source who had provided the DEU with information that he was distributing methamphetamine the hours shortly before his arrest the evening of January 10, 2018.

Upon its filing, the trial court scheduled a hearing on Krebbs' suppression motion. Yet, before the trial court held Krebbs' suppression motion hearing in June 2019, the State did not respond to Krebbs' suppression motion. Also, the State did not make any arguments supporting the legality of the DEU's search of Krebbs' car at the outset of Krebbs' suppression motion hearing.

Instead, at the beginning of Krebbs' suppression motion hearing, the State called its first witness—Patrol Deputy Trussell—who testified that he stopped Krebbs' car after Deputy Soule "asked [him] to perform a traffic stop" because Krebbs' car was speeding, going "over 70 miles an hour." Patrol Deputy Trussell further testified that after stopping Krebbs' car, asking Krebbs to exit his car, and "plac[ing Krebbs] in custody," he had nothing else to do with Krebbs' case.

It is undisputed that the DEU members, including Deputy Soule, arrived almost immediately after Patrol Deputy Trussell arrested Krebbs. Hence, most of the State's case supporting the legality of the DEU's search of Krebbs' car relied on its second and only other witness—Deputy Soule.

Deputy Soule started his direct examination by recounting his experience and training as a law enforcement officer. He explained that he had been employed as a deputy with the Reno County Sheriff's Office since December 2009 and had been assigned to the DEU since July 2015. He explained that he had attended at least 40 hours of training before becoming a deputy and still completes continuing education hours on "drug-related investigations." He noted that he had attended four conferences held by the Kansas Narcotics Officers Association. Additionally, he estimated that he had worked on "approximately 400" "drug cases" in his career, which in addition to his training, had taught him about "certain activities [that were] indicative of drug trafficking."

As for the DEU's investigation of Krebbs as a potential methamphetamine distributor, Deputy Soule testified that the DEU "had several people while investigating other cases [bring] up . . . Krebbs' name as being involved in the distribution of methamphetamine and marijuana" sometime after June 2017. When asked if he knew exactly how many people had brought up Krebbs' name during other investigations, Deputy Soule testified that he "kn[e]w of three for sure[,] but [that] several people as [the DEU] talk[ed] to them . . . brought up [Krebbs'] name." He then explained that most of the people who had brought up Krebbs' name "were *potential* confidential informants that were seeking leniency on pending criminal charges and the agreement wasn't able to be reached between both parties for that to be handled." (Emphasis added.) Still, he continued by testifying about applying for and receiving a GPS search warrant for Krebbs' car based on the information that the DEU had learned from these potential confidential informants. And through his testimony, the State successfully admitted (1) the sworn affidavit that Deputy Soule submitted to the trial court in support of the GPS search warrant on Krebbs' car, (2) the sworn affidavit that Deputy Soule submitted to the trial court for the 15-day extension to install the GPS tracker on Krebbs' car, and (3) the actual GPS search warrant signed by the trial court to install the GPS tracker on Krebbs' car.

After testifying about asking for the GPS search warrant on Krebbs' car, Deputy Soule testified about what he observed once the DEU placed the GPS tracker on Krebbs' car. He testified that Krebbs engaged in "erratic driving," like "making U-turns for apparently no reason" and "changing speeds of travel throughout town." He alleged that in his training and experience, the preceding behavior was indicative of someone "attempt[ing] to avoid or to detect surveillance by law enforcement," which was itself indicative of "drug activity." Also, he testified that Krebbs frequently made "[s]hort-term stops less than five minutes at [the same] residences throughout the city of Hutchinson" "multiple times."

Next, Deputy Soule testified about what the DEU learned during the two trips that Krebbs took to Wichita on December 21, 2017, and January 10, 2018, respectively. As for Krebbs' first trip to Wichita on December 21, 2017, Deputy Soule and the prosecutor engaged in the following dialogue after the prosecutor asked Deputy Soule why Krebbs' first trip was suspicious:

"[Deputy Soule:]  The first trip to Wichita . . . . After dropping [his girlfriend and son off,] he made several stops around [Hutchinson]. Eventually[, he] picked up another female and then drove to *Towne East Mall* in Wichita.

"[Prosecutor:]  Okay. . . . [W]hy was it important that he was making stops prior to going to Wichita?

"[Deputy Soule:]  Based on my training and experience[,] I believe he was collecting money in order to pay his supplier in Wichita for methamphetamine he was picking up.

"[Prosecutor:]  Alright. Did [Krebbs] go to Wichita on that occasion?

"[Deputy Soule:]  Yes, he did.

"[Prosecutor:]  What did you observe, or what did you observe through your GPS?

"[Deputy Soule:]  We were able to follow . . . Krebbs on that occasion. He and the female went inside Towne East Mall and shopped for awhile and returned back outside. When they did so, they returned to his car. They moved

10

the vehicle. . . . Krebbs got out of the driver's seat . . . of his vehicle[,] and [then] Krebbs got into the passenger seat of another vehicle that was parked in the parking lot.

"[Prosecutor:] How long did he stay in that vehicle?

"[Deputy Soule:] Just a minute or two if I remember correctly and [then] they moved to a second parking spot away from where it was originally parked. They stayed there for approximately five to ten minutes. I don't recall exactly[,] and then they moved to a third parking spot.

"[Prosecutor:] So[,] three parking spots within the same parking lot?

"[Deputy Soule:] Yes.

"[Prosecutor:] Okay. . . . [B]ased on your training and experience, is that an indicator of a drug transaction?

"[Deputy Soule:] Yes, sir.

"[Prosecutor:] So[,] what happened after they had moved to those locations?

"[Deputy Soule:] . . . Krebbs got out of the passenger seat of that vehicle and got into the passenger seat of his own vehicle[,] then left that area.

"[Prosecutor:] And where did the vehicle go from there?

"[Deputy Soule:] It went from the east side of Wichita to the west side of Wichita.

"[Prosecutor:] What did the vehicle do on the west side . . . ?

"[Deputy Soule:] They stopped in a parking lot on 21st [Street], . . . [and] sat there for a minute. I believe they switched drivers. At that point[,] Krebbs got back into the driver's seat and the female got back into the passenger seat. From there[,] they continued west until they got to Logan's Road House[,] which is [a] restaurant in Wichita. They went inside. It appeared they ate[,] and they returned back to Reno County.

"[Prosecutor:] Alright. Once he got back to Reno County, did you observe any activity that he had picked up drugs?

"[Deputy Soule:] Yes, sir.

"[Prosecutor:] What did you observe?

"[Deputy Soule:] He again made several short-term stops at different locations throughout town." (Emphasis added.)

Although Krebbs objected on hearsay grounds, after Deputy Soule provided the preceding testimony about what the DEU knew about Krebbs' December 21, 2017

11

Wichita trip, the trial court allowed the State to question Deputy Soule about learning information from the DEA. In addition to testifying about the DEA telling the DEU about Source Four meeting Krebbs at Duncan's house on October 25, 2017, as well as Krebbs and Duncan's phone contact around that same time, Deputy Soule identified a new source—Source Five. Deputy Soule testified that during a DEA interview with Source Five, Source Five "said [that] Duncan was supplying them [*sic*] with methamphetamine" and that he or she "had seen Krebbs at . . . Duncan's residence." Deputy Soule also testified that Source Five had told the DEA that "Duncan was supplying . . . Krebbs with pounds of methamphetamine at a time." Outside of the preceding, however, Deputy Soule provided no more details on Source Five or how he came to learn this information about Source Five from the DEA.

In any case, after testifying about Source Five, Deputy Soule returned to testifying about what the DEU observed while having the GPS tracker on Krebbs' car. Deputy Soule testified that following Krebbs' December 21, 2017 Wichita trip, he and other DEU members "continually" observed Krebbs' car make "short-terms stops" "throughout the city." He alleged that "[s]ome of [the short-term stops] were the same [locations] just on different days . . ." And he again testified that based on his training and experience, Krebbs' car's short-term stops throughout Hutchinson were consistent with drug distributing.

As for Krebbs' second Wichita trip on the day of his arrest, Deputy Soule explained that although he was not "physically watching him," he had been "monitoring" Krebbs' car through the GPS tracker's computer application on January 10, 2018. *He testified that while monitoring Krebbs that day, he became suspicious that "more drug activity was about to occur" because Krebbs' car was making "short-term stops at locations and then began heading towards Wichita."* (Emphasis added.) Deputy Soule explained that given this suspicion, he and the other DEU members decided to physically follow Krebbs' car as it drove to Wichita.

12

Deputy Soule testified that while following Krebbs' car, he saw Krebbs go to a specific "block on south Wavery Road in Wichita" that Depetris was known to live on. Although he never saw Krebbs exit his car, Deputy Soule testified that he saw Krebbs return to his car about an hour after he had presumably parked it there. He explained that once Krebbs returned to his car, he drove to Towne West Mall, went inside the mall, and then came back outside to his car carrying a bag from Champs Sports. He asserted that at that point, Krebbs got into his car and started driving back to Hutchinson. But he alleged that Krebbs did not take the most direct route and made a couple of turns that were consistent with "counter surveillance." Also, he testified that Krebbs was engaging in "counter surveillance" by "driv[ing] at a higher rate of speed than [the DEU] had seen previously."

Deputy Soule ended his direct examination by testifying about asking Patrol Deputy Trussell to stop Krebbs' car. He testified that he asked Patrol Deputy Trussell to stop Krebbs' car after seeing the GPS tracker's computer application indicate that Krebbs was driving "71 miles an hour." But he explained that regardless of Krebbs' speed, he believed that the stop of Krebbs' car, Krebbs' arrest, and the search of Krebbs' car were all supported by probable cause based on the information that the DEU had obtained indicating that Krebbs was distributing methamphetamine before he asked Patrol Deputy Trussell to stop Krebbs' car.

At the start of his cross-examination, Krebbs questioned Deputy Soule about his ability to write accurate reports, affidavits, and narrations. During this questioning, Deputy Soule agreed that he was "aware of the importance of the documentation when it comes to law enforcement reports." He agreed that with his training and experience, he knew how to write "full," "complete," and "accurate" reports. He also agreed that he tried to write his reports in a chronological order and in a way that included "all matters of legal significance."

13

Once Deputy Soule had answered these questions, however, Krebbs asked Deputy Soule about the sources that he had relied on to obtain the GPS search warrant. During this questioning, Deputy Soule agreed that during his direct-examination he had "mention[ed] that some of the informants [had] not work[ed] out." When asked why those informants, i.e., sources, had not worked out, Deputy Soule initially responded, "Various reasons." When pressed to give an example, though, Deputy Soule provided the following answer: "Some of the people [who] want to seek leniency are not ready to change their lives. Our philosophy is we're not going to help someone with criminal charges if they're not willing to change their lifestyle and get away from the controlled substances they're addicted to." Also, when Krebbs further pressed Deputy Soule whether those sources' inability to reach a leniency agreement with the State made those sources unreliable, Deputy Soule countered that this was "[n]ot necessarily" the case because a source's unwillingness to change does not make that source "not usable." Deputy Soule then asserted that all of the sources who he used in "the affidavit were . . . deemed to be credible."

Krebbs next asked Deputy Soule about his direct examination testimony that he had made several short-term stops around Hutchinson before his second trip to Wichita on January 10, 2018, immediately preceding his arrest. After reviewing his reports, affidavits, and narrations upon Krebbs' request, Deputy Soule conceded that none of these documents said that he or any other DEU member observed Krebbs make short-term stops around Hutchinson before driving to Wichita on January 10, 2018. When Krebbs confronted Deputy Soule why he had excluded this important incriminating fact from his prior probable cause explanations, Deputy Soule responded that it was "[j]ust an oversight on [his] part."

Also, when asked by Krebbs directly, Deputy Soule conceded that during the DEU's investigation of him, the DEU never received any information indicating that Source Four saw him buy drugs while at Duncan's house on October 25, 2017. Likewise,

14

when asked by Krebbs directly, Deputy Soule conceded that no DEU member saw him enter Depetris' purported house on Waverly Street as the DEU physically surveyed him in Wichita near Depetris' purported house shortly before his arrest on January 10, 2018. Finally, when Krebbs asked about the data from the GPS tracker that the DEU had installed on his car, Deputy Soule admitted that the Reno County Sheriff's Office no longer had any of the GPS data. Deputy Soule then alleged that the GPS data was no longer available because the Sheriff's Office had failed to save it by mistake.

Once Deputy Soule finished testifying, both the State and Krebbs made oral arguments to the trial court. At that time, the State provided the following argument in support of its request to deny Krebbs' suppression motion:

> "So[,] the bottom line is, Judge, your question to be resolved here is whether there was probable cause for a search. We don't allow officers to make suppositions[,] but we do look at their training and experience to determine whether or not a person of reasonable caution would believe that an offense has been committed. In this particular case[,] we have a long investigation. This is a six-month-long investigation. We have affidavits regarding the criminal activity[,] which Judge Chambers determined were sufficient to show criminal activity sufficient to allow the application of a GPS device to [Krebbs'] vehicle. So[,] you do have a judicial finding of probable cause that there is criminal action afoot. So[,] this is a little bit different than officers just going in based on just their own information. We have a judicial finding that [Krebbs] was involved in criminal activity. If [it] hadn't been able to find that[,] the Court couldn't have the put [*sic*] the GPS. We could have not ordered the GPS to be placed on that vehicle. So[,] you have the affidavit and all the information in the record. . . .
>
>     . . . .
>
>     "So[,] you have all three [of the State's Exhibits, which were] previously presented to Judge Chambers regarding [Krebbs'] criminal activity. This is the second time [Krebbs] had gone in a few weeks to Wichita. I suppose it could be argued that a person can go in the middle of the night to Wichita[,] or go to Wichita to get something from the store. In fact[,] he actually purchased something from the store. But then you have the real activity of [Krebbs,] which is specifically consistent with counter

15

surveillance. It is reasonable to believe as far as the officers [were] concerned that he sped up because he observed someone behind him, who made the same turns as he did. That's the purpose of counter surveillance, Judge. It's to determine whether somebody could be following you and the testimony was [that] he never sped. He always did everything within the speed limit. He was doing this counter surveillance all the time. So why would he need to speed up in the middle of the night to get home? So[,] his activities—the fact [that the DEU] didn't actually see him go into the person's house is not—I mean, he has a point, but he's there for an hour, leaves and comes back. If there had been no prior connection with him with that person, then it would be questionable, Judge, but we have the evidence provided by the DEA of his specific involvement with that specific person. If this had been a situation where he just parked in the same block as a known drug offender and no one saw him go in and nobody saw him come out, that would be kind of stretching. But they had the information from the DEA. Not only did they have the information he was present when drug deals were occurring, but they had information that he got his methamphetamine from that person. Now, if it is very reasonable and very justified on [the] part of the officers to believe that the reason he was there at the person's house or parked in the person's block, same person's block as the house, who was his supplier, that he was there to pick up methamphetamine. They knew . . . Depetris was . . . Krebbs' supplier.

"So[,] the question before the Court is did [the DEU] have probable cause if [the DEU had] brought this information to the Court knowing everything you know, would you have signed a search warrant? That's the question. And the bottom line is, Judge, with all the information [that the DEU] had; the fact [that] he had just stopped in that block, that he was a supplier, this Court would have issued a search warrant based on that information."

Krebbs responded to the State's oral argument by generally repeating the arguments within his written motion to suppress. He emphasized that none of the information that the DEU allegedly received from the DEA about him had been confirmed. He alleged that all of the behavior that the DEU saw him engage in on January 10, 2018, was innocuous, stressing that although Deputy Soule had testified that he made several short-term stops before he left for Wichita that day, none of Deputy Soule's prior reports, affidavits, and narrations included such information. And given the

preceding, he concluded that the trial court must grant his suppression motion because the DEU lacked probable cause to search his car immediately following his arrest.

At the conclusion of Krebbs' suppression motion hearing, the trial court took Krebbs' suppression motion under advisement. Ultimately, though, the trial court denied Krebbs' suppression motion. In doing so, the trial court never filed a written order denying Krebbs' suppression motion. Instead, at the conclusion of the late July 2019 hearing on the State's K.S.A. 60-455 motion, the trial court gave the following explanation about when and why it denied Krebbs' suppression motion:

> "I have a note that reminded me . . . [s]o I will clarify on the record today[,] that on June 18, I sent an e-mail to both Counsel stating [that] I was denying [Krebbs'] motion to suppress . . . . I wanted to make sure that was of record. I[,] basically[,] to summarize my decision[,] found [that] there was an exception to the warrant requirement. In this situation[,] probable cause plus exigent circumstances justified the search and seizure[,] and the State satisfied its burden."

*Postsuppression Proceedings*

After the trial court denied Krebbs' suppression motion, the State amended its possession of marijuana charge against Krebbs to possession of tetrahydrocannabinol (THC), a class A misdemeanor in violation of K.S.A. 2017 Supp. 21-5706(b)(7). Afterwards, Krebbs' criminal case eventually proceeded to jury trial, where Krebbs had a continuing objection to the discussion of any evidence he sought to exclude through his suppression motion. In the end, the jury found Krebbs guilty as charged of distributing methamphetamine, possessing THC, and criminal possession of a firearm.

Before his sentencing, Krebbs moved for a new trial on the basis that the trial court wrongly denied his motion to suppress. Also, before his sentencing, Krebbs moved for a dispositional or, alternatively, a durational departure. But at his sentencing, the trial

17

court denied both motions. It then imposed a total controlling sentence of 154 months' imprisonment followed by 36 months' postrelease supervision upon Krebbs for his distributing methamphetamine, possessing THC, and criminal possession of a firearm convictions.

Krebbs now timely appeals.

ANALYSIS

*Did the trial court err by denying Krebbs' suppression motion?*

In challenging the trial court's denial of his suppression motion on appeal, Krebbs makes two arguments: First, Krebbs argues that the trial court wrongly denied his suppression motion because Deputy Soule "unlawfully seized" him without probable cause when he ordered Deputy Trussell to arrest him. Second, Krebbs argues that the trial court wrongly denied his suppression motion because even if probable cause supported his warrantless arrest, the DEU lacked probable cause to search his car immediately following his warrantless arrest.

In making his first argument, Krebbs challenges all the information that Deputy Soule relied on to have him arrested as a methamphetamine distributor. He contends that nothing that he did before or during his first trip to Wichita on December 21, 2017, provided the DEU with probable cause for his arrest because there were innocuous explanations for his allegedly incriminating behavior. Alternatively, he contends that any probable cause that the DEU had for his arrest following his first Wichita trip had dissipated when Deputy Soule ultimately had him arrested following his second Wichita trip on January 10, 2018. At the same time, he asserts that none of the sources that Deputy Soule relied on provided the DEU with probable cause for his arrest as a methamphetamine distributor. He complains that any information obtained from those

18

sources did not create probable cause for his arrest since Deputy Soule "provided no basis for establishing the reliability of any of the unnamed [sources] . . . ."

In arguing that Deputy Soule lacked probable cause to order his arrest, Krebbs also questions Deputy Soule's suggestion that he made several short-term stops around Hutchinson before taking his second Wichita trip. He notes that Deputy Soule never mentioned these short-term stops in any of his probable cause explanations. Further, he emphasizes that there is no way to confirm Deputy Soule's June 2019 suppression hearing testimony because the Reno County Sheriff's Office alleges that it lost all the GPS data taken from the tracker placed on his car.

As for his second argument, Krebbs specifically attacks the trial court's ruling that "probable cause plus exigent circumstances justified the search" of his car. He stresses that caselaw supports that "there is a temporal requirement for probable cause to search" a car. He then argues that "if probable cause existed to arrest him at all . . . [then] it existed based on his activities during his first trip to Wichita" because he engaged in "no conduct" between his first and second Wichita trips that provided the DEU with probable cause to search his car immediately after his arrest. In other words, Krebbs contends that the DEU lacked probable cause to search his car because the information it was relying on for the existence of probable cause was stale.

In its brief, the State first counters that Krebbs failed to preserve his argument that Deputy Soule lacked probable cause to order his arrest because he is raising this argument for the first time on appeal. It stresses that before the trial court, Krebbs' suppression motion focused solely on whether there was probable cause to search his car, not on whether there was probable cause for his arrest. It next argues that regardless of this preservation issue, we should defer to the trial court's apparent credibility determination in Deputy Soule's favor and against Krebbs. It contends that Krebbs' driving patterns, Krebbs' contact with Duncan, and Krebbs' contact with Depetris during

19

the DEU's GPS investigation supports the trial court's apparent credibility determination in Deputy Soule's favor. Also, the State argues that Krebbs' complaints about the sources who the DEU relied on to establish probable cause for his arrest are meritless for three reasons: (1) because Deputy Soule testified that the DEU ultimately determined that these sources were credible; (2) because Deputy Soule described one of these sources as providing the DEU with "reliable information over the past month"; and (3) because the DEU did not otherwise rely on these sources after "the information was learned from [them]" in June 2017.

As for as Krebbs' contention that the DEU lacked probable cause to search his car because its probable cause was stale, the State argues that this contention is flawed too. In short, the State asserts that the same information that provided Deputy Soule with probable cause to order Krebbs' arrest also provided the DEU with probable cause to search Krebbs' car. It further contends that Krebbs' argument that any probable cause that the DEU had to search his car came from his first Wichita trip and was therefore stale upon his actual arrest on January 10, 2018, "ignores what [the DEU] observed on January 10, 2018 . . . ."

*Suppression Law Review*

The Fourth Amendment to the United States Constitution allows a law enforcement officer to arrest a person without a warrant while in public if that law enforcement officer has probable cause for the person's arrest. *State v. Hill*, 281 Kan. 136, 145, 130 P.3d 1 (2006). Relatedly, under the Fourth Amendment, a warrantless search by a law enforcement officer is per se unreasonable unless it can fit into one of the recognized exceptions to the warrant requirement. "Those recognized exceptions are: 'consent; search incident to a lawful arrest; stop and frisk; *probable cause plus exigent circumstances*; the emergency doctrine; inventory searches; plain view or feel; and

20

administrative searches of closely regulated businesses.'" (Emphasis added.) *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012).

"Probable cause is the reasonable belief that a specific crime has been or is being committed and that the defendant committed [a] crime." *Hill*, 281 Kan. at 146. Thus, "[p]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to assure a person of reasonable caution that an offense has been or is being committed and the person being arrested is or was involved in a crime." 281 Kan. at 146. Meanwhile, "'[p]robable cause' to search a vehicle can be established if the totality of the circumstances indicates there is a 'fair probability' that the vehicle contains contraband or evidence." *Sanchez-Loredo*, 294 Kan. at 55. This is because "[u]nder the automobile exception to the Fourth Amendment's warrant requirement, which is a subclass of the probable-cause-plus-exigent-circumstances exception, the mobility of the vehicle provides the exigent circumstances without the necessity of proving anything more." 294 Kan. 50, Syl. ¶ 4. As a result, "[i]f a vehicle is readily mobile and probable cause exists to believe the vehicle contains contraband or evidence of a crime, the Fourth Amendment does not require a warrant for police to search the vehicle." 294 Kan. 50, Syl. ¶ 4.

When reviewing the trial court's denial of defendants' suppression motion, this court engages in a bifurcated review. Under the first step of this court's review, this court considers the trial court's fact-findings to determine whether they are supported by substantial competent evidence. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). While doing this, this court must refrain from reweighing the evidence of reassessing any of the trial court's credibility determinations. 307 Kan. at 827. On the other hand, under the second step of this court's review, this court considers the trial court's ultimate legal reasoning for denying the defendants' suppression motion while exercising de novo review. 307 Kan. at 827. Likewise, when the issue is whether the defendants have properly preserved an argument about the trial court's denial of their suppression motion

for appeal and whether they have properly preserved an argument for appeal, this constitutes a question of law over which this court exercises de novo review. *State v. Haberlein*, 296 Kan. 195, 203, 290 P.3d 640 (2012).

*Most Complaints About Deputy Soule's Probable Cause Explanations Waived*

Before addressing the specific problems with Krebbs' appellate arguments, it is first important to consider a few issues that Krebbs has never properly addressed either before the trial court or on appeal. The first issue that Krebbs has never properly addressed concerns the various changes that Deputy Soule made to his probable cause explanations following Krebbs' arrest. Highly summarized, the record on appeal establishes that Deputy Soule's explanation for why he had probable cause to order Krebbs' arrest and then search Krebbs' car became more detailed and stronger as time passed.

Once again, in the narrative affidavit section of Krebbs' arrest report that Deputy Soule completed the evening of Krebbs' arrest on January 10, 2018, Deputy Soule reported that he had probable cause to order Krebbs' arrest and to search Krebbs' car for the following reasons: (1) because the DEU had received information that during Krebbs' December 21, 2017 Wichita trip, Krebbs met with someone driving a car registered to Depetris; (2) because the DEU had received information that during Krebbs' December 21, 2017 Wichita trip, Krebbs "picked up methamphetamine . . . to distribute"; and (3) because on January 10, 2018, the DEU had observed Krebbs' park his car next to a specific address in Wichita purportedly associated with Depetris per information previously received from the DEA. Although Deputy Soule mentioned that Krebbs traveled to Towne West Square Mall in Wichita after leaving Depetris' "residence" in his narrative affidavit, Deputy Soule never suggested that Krebbs' decision to shop at Towne West before returning to Hutchinson on January 10, 2018, was indicative of anything criminal.

22

The next day, Deputy Soule completed his January 11, 2018 sworn affidavit, which the State filed with its complaint in support of its charges against Krebbs. Deputy Soule's probable cause explanation within this sworn affidavit was substantively identical to Deputy Soule's January 10, 2018 written probable cause explanation within the narrative affidavit portion of Krebbs' arrest report. Yet, several days later, on January 23, 2018, Deputy Soule completed a new probable cause narration within a new affidavit, which the State then filed as supplementary support of its charges against Krebbs. In his January 23, 2018 sworn affidavit, Deputy Soule added that he had probable cause to order Krebbs' arrest and to search Krebbs' car because the DEU had seen Krebbs make "several short term stops at addresses in Hutchinson" both before and after his December 21, 2017 Wichita trip. In this new affidavit, Deputy Soule also alleged that from his "training and experience," such short-term stops were indicative of someone collecting money to make a large drug purchase before distributing individual portions of that large drug purchase.

Also, during his June 2019 suppression hearing testimony, Deputy Soule revealed several more things that he believed gave him probable cause to order Krebbs' arrest and to search Krebbs' car, but yet he had never reported. As for as Krebbs' December 21, 2017 Wichita trip, Deputy Soule now testified that during this first Wichita trip, Krebbs went to Towne East Square Mall's parking lot and did many odd things, including getting into another car. And Deputy Soule testified that this behavior was indicative of a "drug transaction." As for Krebbs' January 10, 2018 Wichita trip, Deputy Soule now testified that Krebbs' driving patterns while driving back to Hutchinson was indicative of "counter surveillance" because he sped, he made odd turns, and did not take the most direct route back. In addition to the preceding, Deputy Soule now testified that before ordering Krebbs' arrest and searching Krebbs' car, the following had occurred: (1) he had observed Krebbs engage in erratic driving throughout the DEU's GPS investigation; (2) he had observed Krebbs make multiple short-term stops around Hutchinson consistent with drug distribution throughout the DEU's GPS investigation; (3) he had learned from

23

the DEA about a different source—Source Five, who said that "Duncan was supplying . . . Krebbs with pounds of methamphetamine at a time"; and (4) he had "deemed" the sources listed in his November 27, 2017 sworn GPS affidavit "credible" despite those sources never reaching a deal with the State on their pending charges.

Thus, the record on appeal definitively establishes that Deputy Soule's explanation for why he had probable cause to order Krebbs' arrest and to search Krebbs' car became more detailed and stronger as time passed. Plainly, this is troubling because as Deputy Soule recognized during his cross-examination at Krebbs' suppression motion hearing, it is important for law enforcement officers' writings to be "complete" and contain "all matters of legal significance."

Even so, our ability to address Deputy Soule's ever-changing probable cause explanations is directly thwarted by the arguments that Krebbs made before the trial court and now makes to us on appeal. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018) (holding that absent the application of an exception, issues not raised by an appellant below may not be raised by an appellant for the first time on appeal); see also *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (holding that an issue not briefed on appeal is deemed waived and abandoned). Thus, we may address the apparent problems with Deputy Soule's ever-changing probable cause explanations only to the extent that Krebbs has properly raised his arguments about Deputy Soule's ever-changing probable cause explanations on appeal.

Before the trial court, Krebbs alleged that "[Deputy Soule] padded his [probable cause] narrative with information gathered on a different day of following [him], blurring the dates a little to obscure the fact that the driving patterns [that he] witnessed on an earlier day that [he] deemed consistent with drug distribution did NOT occur on the day of [his] arrest." Following Deputy Soule's testimony at the suppression hearing, Krebbs also noted that although Deputy Soule had testified that he made several short-term stops

24

before his second Wichita trip on January 10, 2018, none of Deputy Soule's reports, affidavits, and narrations included such information. In his appellant's brief, Krebbs continues to question the veracity of Deputy Soule's testimony that he made several short stops around Hutchinson before taking his second Wichita trip, especially since Deputy Soule skirted mentioning these short stops in any of his probable cause explanations. Also, in his appellant's brief, Krebbs now attacks the trustworthiness of Deputy Soule's sources within his GPS search warrant affidavit since Deputy Soule never verified "the reliability of any of the unnamed informants . . . ."

So throughout the pendency of his case, Krebbs' complaints about Deputy Soule's ever-changing probable cause explanations have been as follows: (1) that Deputy Soule intentionally insinuated that the incriminating driving patterns he engaged in during his first Wichita trip actually occurred immediately before his arrest during his second Wichita trip; (2) that Deputy Soule lied when he testified that he made several short-term stops around Hutchinson before his second Wichita trip; and (3) that Deputy Soule never verified the reliability of the sources within his GPS search warrant affidavit. Yet, Krebbs has failed to challenge most of the apparent discrepancies with Deputy Soule's ever-changing probable cause explanations.

This includes Krebbs' failure to challenge the following: (1) that Deputy Soule never asserted that he made "several short term stops at addresses in Hutchinson" both before and after taking his first Wichita trip until Deputy Soule submitted his January 23, 2018 sworn affidavit to support the State's charges; (2) that Deputy Soule never asserted that he did odd things indicative of drug distribution in the Towne East Square Mall parking lot during his first Wichita trip until Deputy Soule submitted his June 2019 suppression hearing testimony; (3) that Deputy Soule never asserted that he engaged in counter surveillance by speeding, making odd turns, and not taking the most direct route back from his second Wichita trip until Deputy Soule submitted his June 2019 suppression hearing testimony; and (4) that Deputy Soule never revealed that there was a

25

fifth source who "had seen [him] at . . . Duncan's residence" and knew that Duncan was his supplier until Deputy Soule submitted his June 2019 suppression hearing testimony.

As a result, Krebbs has waived and abandoned all complaints that he could have made about Deputy Soule's ever-changing probable cause explanations but has thus far failed to raise. See *Arnett*, 307 Kan. at 648 (holding that an issue not briefed on appeal is deemed waived and abandoned). For this reason, although the record on appeal reveals major concerns about the veracity of Deputy Soule's ever-changing explanations why he had probable cause to order Krebbs' arrest and to search Krebbs' car, we constrict our review of Deputy Soule's ever-changing probable cause explanations to the narrow complaints that Krebbs has raised during the pendency of his case.

*All Complaints About the State's Potential Failure to Carry its Burden of Proof Waived*

Another related point cutting against some of Krebbs' claims is that he has never properly addressed either before the trial court or on appeal the State's specific arguments countering his suppression motion. In particular, Krebbs has never contended that the State's specific counterarguments did not satisfy its burden of proving that the DEU members had probable cause for his warrantless arrest and for the warrantless search of his car. See *State v. Ton*, 308 Kan. 564, 568, 422 P.3d 678 (2018) (holding that when a defendant moves to suppress evidence as illegally seized, the State carries the burden of proving that a law enforcement officer's warrantless search was lawful).

*All Complaints About the Trial Court's Inadequate Ruling Waived*

To review, at the end of the hearing on the State's K.S.A. 60-455 motion, the trial court provided the following explanation about when it denied and why it was denying Krebbs' suppression motion:

26

"I have a note that reminded me . . . [s]o I will clarify on the record today[,] that on June 18, I sent an e-mail to both Counsel stating [that] I was denying [Krebbs'] motion to suppress . . . . I wanted to make sure that was of record. I[,] basically[,] to summarize my decision[,] found [that] there was an exception to the warrant requirement. In this situation[,] probable cause plus exigent circumstances justified the search and seizure and the State satisfied its burden."

Although the trial court's explanation clearly references an e-mail that it had sent to both the parties, which included its ruling, this e-mail has not been included in the record on appeal. Thus, the trial court's oral ruling at the end of the State's K.S.A. 60-455 motion hearing is the only explanation from the trial court included in the record on appeal addressing why it denied Krebbs' suppression motion.

From this comment, it seems that the trial court denied Krebbs' suppression motion because it found that the DEU had "probable cause plus exigent circumstances" to search Krebbs' car. And by ruling that probable cause plus exigent circumstances justified the search of Krebbs' car, the trial court implied that the DEU's search of Krebbs' car was permissible under the automobile exception to the search warrant requirement.

As previously noted, the automobile exception to the search warrant requirement is a subclass of the probable-cause-plus-exigent circumstances exception to the warrant requirement. *Sanchez-Loredo*, 294 Kan. 50, Syl. ¶ 4. Thus, the probable-cause-plus-exigent-circumstances exception to the search warrant requirement is necessarily broader than the automobile exception to the search warrant requirement.

At the end of the State's hearing on its K.S.A. 60-455 motion, the trial court told the parties that it was making a record of the ruling it made via e-mail—an e-mail that does not appear in the record on appeal—in which it denied Krebbs' suppression motion because it determined that the DEU had probable cause plus exigent circumstances to search Krebbs' car. Yet, then after telling the parties this, the trial court provided no fact-

27

findings or analysis to support its oral probable cause plus exigent circumstances ruling. Hence, the trial court's oral ruling gives us no guidance on the following: (1) why it believed that the DEU had probable cause to search Krebbs' car; (2) why it seemingly rejected Krebbs' suppression motion arguments; and (3) why it seemingly accepted the State's counterarguments.

Although neither party has ever addressed the preceding inadequacies with the trial court's oral ruling, the effect of Krebbs' failure to properly address the trial court's nonexistent fact-findings in support of its oral ruling requires us to do so. In short, under our rules (1) giving the defendant the burden to designate a record definitively establishing prejudicial error and (2) requiring the defendant to object to the trial court's inadequate fact-findings and legal conclusions while still before the trial court, Krebbs' failure to properly address the trial court's nonexistent fact-findings in support of its oral ruling requires us to presume that the trial court correctly denied Krebbs' suppression motion.

To begin with, while it is not entirely clear from the trial court's oral ruling, it seems that the trial court's e-mail may have contained additional details about its suppression decision. Again, when discussing the e-mail, the trial court explained that it was merely "summariz[ing]" its decision from its e-mail "to make sure it was of record." By stating that it was merely summarizing the decision within its previous e-mail to the parties, the trial court's comment implies that its e-mail may have included fact-findings to support its oral probable cause plus exigent circumstances ruling. The lack of this e-mail in the record on appeal is highly problematic for Krebbs' arguments based on our Supreme Court's recent decision in *State v. Vonachen*, 312 Kan. 451, 461, 476 P.3d 774 (2020).

There, the trial court granted the State's compel motion over Vonachen's objection through an "email order." 312 Kan. at 460. On appeal to our Supreme Court, Vonachen

argued that the trial court wrongly granted the State's compel motion over his objection. Nonetheless, our Supreme Court began its analysis by citing the well-known rule that a defendant claiming error has the burden to designate a record definitively establishing prejudicial error or else an appellate court will presume that the trial court's disputed decision was proper. It then refused to consider Vonachen's argument since he failed to include the trial court's e-mail order in his record on appeal. 312 Kan. at 460-61.

Then, the court noted that the only information that it had about the trial court's basis for granting the State's compel motion came from a hearing where Vonachen quoted some of the trial court's e-mail order. It explained that according to Vonachen's quotation, the trial court granted the State's compel motion over his objection in the e-mail order because it had "'reviewed'" the relevant material but did "'not find anything that should be excluded . . . .'" 312 Kan. at 460. But it further explained that none of the language that Vonachen quoted from the e-mail order addressed the trial court's "findings and conclusions of law on this issue." 312 Kan. at 461. It therefore refused to consider Vonachen's argument that the trial court wrongly granted the State's motion to compel, holding that Vonachen's failure to include the trial court's e-mail order in the record on appeal constituted a violation of his burden to designate a record definitively establishing his claim of error. And it held that this also prevented it from "meaningfully examin[ing]" the trial court's decision granting the State's motion to compel over his objection. 312 Kan. at 461.

Here, Krebbs' failure to include the trial court's e-mail order denying his suppression motion in the record on appeal places us in the same position that our Supreme Court was in when considering Vonachen's argument that the trial court wrongly granted the State's compel motion over his objection. By not including the trial court's e-mail order denying his suppression motion in the record on appeal, we must rely exclusively on the trial court's oral ruling summarizing the decision within its e-mail order. As explained previously, the trial court's oral ruling never addressed why it

29

believed that the DEU had probable cause to search Krebbs' car, why it seemingly rejected all of Krebbs' suppression motion arguments, and why it seemingly accepted all of the State's counterarguments. Thus, by not including the trial court's e-mail order in his record on appeal, Krebbs has thwarted our access to the fact-findings and legal conclusions that we must have to meaningfully review Krebbs' arguments about the trial court wrongly denying his suppression motion. So just like Vonachen, Krebbs has violated his burden to designate a record definitively establishing his claim of error.

For this reason, we follow *Vonachen*'s precedent by presuming that the trial court's denial of Krebbs' suppression motion was proper. Also, in doing so, we note that our Supreme Court's decision in *Vonachen* is particularly persuasive authority in Krebbs' case for two reasons: (1) because the e-mail orders at issue in Vonachen's case and Krebbs' case were issued by the same trial court and (2) because our Supreme Court issued its *Vonachen* decision in early December 2020, more than three months before Krebbs' appellant's brief due date. In other words, because our Supreme Court issued its *Vonachen* decision well before his appellant's brief due date, Krebbs should have known that he needed to include the trial court's e-mail order in his record on appeal for us to consider his record on appeal complete. And at the very least, Krebbs should have known that he needed to address *Vonachen*'s precedent as well as his decision not to include the trial court's e-mail order in his record on appeal in his appellant's brief. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) (holding that the failure to show why an argument is sound in the face of contrary authority is akin to failing to brief the issue). So we have no hesitation relying on *Vonachen* to presume that the trial court's denial of Krebbs' suppression motion was proper.

Notwithstanding Krebbs' waiver of all his suppression motion arguments, we presume that the trial court's denial of Krebbs' suppression motion was proper given his failure to object to the trial court's obviously inadequate oral ruling. Although Kansas Supreme Court Rule 165 (2021 Kan. S. Ct. R. 230) gives the trial court the primary duty

to make adequate fact-findings and legal conclusions on all disputed issues, a defendant has the duty to object to the trial court's inadequate fact-findings and legal conclusions. *State v. Gill*, 56 Kan. App. 2d 1278, Syl. ¶ 5, 445 P.3d 1174 (2019). The defendant's objection is necessary because it gives the trial court the "opportunity to correct any alleged inadequacies." 56 Kan. App. 2d 1278, Syl. ¶ 5. Thus, when a defendant fails to challenge the trial court's fact-findings and legal conclusions as inadequate below, we may presume that the trial court "found all facts necessary to support its judgment." *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015).

Even if we were to assume for the sake of argument that Krebbs' failure to include the trial court's e-mail order in his record on appeal was harmless because the trial court's e-mail order echoed its oral ruling, Kansas caselaw required Krebbs to object to the trial court's obviously inadequate oral ruling while before the trial court. See *Gill*, 56 Kan. App. 2d 1278, Syl. ¶ 5. Thus, Krebbs' failure to object to the trial court's inadequate fact-findings supporting its oral probable cause plus exigent circumstances ruling means that we may presume that the trial court found all the facts necessary to support its denial of Krebbs' suppression motion. See *Dern*, 303 Kan. at 394.

### No Probable Cause to Arrest Argument Unpreserved

Although we hold that the trial court properly denied Krebbs' suppression motion as discussed in the preceding section, we note that there are more preservation problems with Krebbs' appeal. Again, Krebbs' primary argument on appeal is that the trial court wrongly denied his suppression motion because the DEU "unlawfully seized" him without probable cause when Deputy Soule ordered his warrantless arrest. In making this argument, Krebbs repeats a couple of the complaints that he made about Deputy Soule below. Specifically, he repeats his argument that nothing that he did before or during his first Wichita trip on December 21, 2017, gave Deputy Soule or the DEU a reasonable belief that he was a methamphetamine distributor. Also, he repeats his argument that

Deputy Soule's probable cause explanations were unreliable because Deputy Soule never mentioned he made short-term stops before and after his second Wichita trip in any of his probable cause explanations before his June 2019 suppression motion testimony.

Even so, as the State points out in its brief, Krebbs never argued that the trial court should suppress the evidence seized from his car during the DEU's search because Deputy Soule lacked probable cause to order his arrest below. Instead, before the trial court, all of Krebbs' suppression motion arguments involved whether the DEU had probable cause to search his car.

To review, in his suppression motion, the sum total of Krebbs' arguments were as follows: (1) that the DEU lacked probable cause to search his car because nothing he did during the DEU's GPS investigation created a reasonable belief that he was a methamphetamine distributor; (2) that the DEU lacked probable cause to search his car because nothing illegal within his car was in plain view when Patrol Deputy Trussell stopped his car and then immediately arrested him; (3) that the DEU lacked probable cause to search his car because the mobility of his car did not create exigent circumstances allowing for its search under automobile exception to the search warrant requirement; and (4) that the DEU lacked probable cause to search his car because under the assumption he was speeding, his speeding did not support the DEU's search of his car.

As a result, although Krebbs' appellant's brief sometimes raises similar complaints about the veracity of Deputy Soule's probable cause explanations while arguing that the trial court wrongly denied his suppression motion, *Krebbs never argued that Deputy Soule lacked probable cause to order his arrest while before the trial court*. To the contrary, before the trial court, Krebbs' complaints about the veracity of Deputy Soule's probable cause explanations focused solely on whether the DEU had probable cause to search his car. Thus, the State has correctly argued that Krebbs is raising this argument for the first time on appeal.

As mentioned earlier, absent the application of an exception, issues not raised by an appellant before the trial court may not be raised by an appellant for the first time on appeal. *Arnett*, 307 Kan. at 650. Also, Kansas Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 36) requires an appellant who did not raise an argument below, to "[explain] why the issue is properly before the court." Then, when raising an issue for the first time on appeal, the appellant has the duty to invoke an exception and explain why an issue not raised before the trial court is properly before this court. Most importantly, our Supreme Court has determined that when an appellant violates Rule 6.02(a)(5), that appellant abandons his or her argument because failing to explain why an argument was not raised below is tantamount to inadequately briefing the issue. See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

Here, Krebbs has not only failed to point out that he never argued that Deputy Soule lacked probable cause to have him arrested below but also failed to invoke one of the exceptions allowing him to raise this argument for the first time on appeal. Moreover, Krebbs' violation of Rule 6.02(a)(5) is particularly troubling because in its appellee's brief, the State clearly asserted that we should not consider his newly raised argument that there was no probable cause for his arrest. By extension, because the State argued that Krebbs was challenging whether probable cause supported his arrest for the first time on appeal, he had ample notice of his failure to comply with Rule 6.02(a)(5) in his appellant's brief. As a result, there is no excuse for Krebbs' failure to file a reply brief in which he attempted to comply with Rule 6.02(a)(5)'s requirement that an appellant explain why an issue not raised below is properly before this court for the first time on appeal.

In conclusion, by violating Rule 6.02(a)(5), Krebbs has inadequately briefed and therefore abandoned his contention that the trial court wrongly denied his suppression motion because Deputy Soule lacked probable cause to order his arrest. See also *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014) (holding that "[f]uture litigants

should consider this a warning and comply with Rule 6.02[a][5] by explaining why an issue is properly before the court if it was not raised below—or risk a ruling that an issue improperly briefed will be deemed waived or abandoned"). Thus, regardless of the other preservation problems with Krebbs' arguments on appeal, we will not consider Krebbs' argument—that the trial court wrongly denied his suppression motion because Deputy Soule lacked probable cause to order his arrest—since Krebbs is raising this argument for the first time on appeal without attempting to comply with Rule 6.02(a)(5).

### No Probable Cause to Search Argument Unpreserved

To review, in his appellant's brief, Krebbs argues that the DEU lacked probable cause to search his car because "if probable cause existed to arrest him at all . . . [, then] it existed based on his activities during his first trip to Wichita" on December 21, 2017. He therefore asserts that the trial court wrongly denied his suppression motion because if the DEU had probable cause to search his car, the DEU's probable cause had gone stale when Deputy Soule and the other DEU members actually searched his car immediately following his arrest on January 10, 2018.

As just mentioned in the previous section, though, Krebbs made very specific arguments why the DEU lacked probable cause to search his car in his suppression motion. And absent some liberal construction of Krebbs' arguments within his suppression motion, it is readily apparent that Krebbs' suppression motion contained no arguments that the trial court should grant his motion because the DEU's probable cause to search his car had gone stale. Thus, as with Krebbs' argument—that the trial court wrongly denied his suppression motion because Deputy Soule lacked probable cause to order his arrest—Krebbs is raising his argument that the DEU's probable cause to search his car had gone stale for the first time on appeal.

34

But in his appellant's brief, Krebbs has once again failed to note that he is raising this argument for the first time on appeal, let alone invoke one of the exceptions allowing him to raise this argument for the first time on appeal. Thus, as with his argument that the trial court wrongly denied his suppression motion because Deputy Soule lacked probable cause to order his arrest, Krebbs has violated Rule 6.02(a)(5) by not explaining why we should consider his newly raised argument about the DEU's probable cause to search his car being stale. See *Godfrey*, 301 Kan. at 1044; *Williams*, 298 Kan. at 1085.

Lastly, we further note that even under the most liberal construction of Krebbs' suppression motion arguments, all of Krebbs' temporal-based probable cause complaints concerned whether his car's mobility provided the DEU with the exigent circumstances it needed to search his car under the automobile exception to the search warrant requirement. Nevertheless, in *Sanchez-Loredo*, our Supreme Court held that "the mobility of the vehicle provides the exigent circumstances without the necessity of proving anything more." 294 Kan. 50, Syl. ¶ 4. *As a result, the only argument about the DEU's probable cause to search his car that Krebbs could have properly raised before this court has already been rejected by our Supreme Court*. This means that even if we assumed that Krebbs' current appellate argument was the argument he made below, that is, assumed that Krebbs' current appellate argument concerned whether the mobility of his car provided the DEU with the exigent circumstances that it needed to search his car under the automobile exception to the search warrant requirement, this argument is meritless. See also *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017) (holding that absent some indication that our Supreme Court is moving away from a prior holding, this court is duty-bound to follow our Supreme Court precedent).

*Did the trial court err when sentencing Krebbs?*

Krebbs final argument on appeal concerns whether the Kansas Sentencing Guidelines Act (KSGA) sentencing scheme violates section 5 of the Kansas Constitution

Bill of Rights. In his brief, Krebs notes that previously, our Supreme Court has held that section 5 of the Kansas Constitution Bill of Rights, which states that "[t]he right of trial by jury shall be inviolate," "preserves the jury trial right as it historically existed at common law when our state's constitution came into existence.'" *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1133, 442 P.3d 509 (2019). In his brief, Krebbs further notes that under K.S.A. 2020 Supp. 21-6814(a) of the KSGA, before the trial court may sentence a defendant, the defendant's "criminal history shall be admitted in open court by the [defendant] or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge." But according to Krebbs, because section 5 preserves the jury trial right as it existed at common law, section 5 requires any fact that enhances the severity of a defendant's sentence to be proven to a jury beyond a reasonable doubt before a sentencing court may rely on that fact to enhance the severity of the defendant's sentence. Thus, Krebbs argues that the KSGA sentencing scheme violates section 5 of the Kansas Constitution Bill of Rights because it allows the trial court to rely on a defendant's criminal history to enhance the severity of the defendant's sentence without first proving the defendant's criminal history to a jury beyond a reasonable doubt.

In the context of his case, Krebbs contends that the trial court violated his common-law jury trial right under section 5 when it relied on his criminal history score of G while sentencing him to a total controlling sentence of 154 months' imprisonment followed by 36 months' postrelease supervision without first having his criminal history proven to a jury beyond a reasonable doubt. Based on this contention, he asks us to vacate his sentence and remand to the trial court with directions to resentence him without relying on his criminal history.

In making his argument, Krebbs recognizes that he never objected to the trial court's reliance on his criminal history to enhance the severity of his sentence below. All the same, Krebbs contends that we should consider his argument for the first time on appeal under two exceptions to the general rule prohibiting us from reviewing arguments

not raised below. In particular, he argues that we should consider his contention that the trial court violated his common-law jury trial right under section 5 by relying on his criminal history to enhance the severity of his sentence for the first time on appeal because (1) his argument involves only a question of law that arises on proved or admitted facts that is finally determinative of his case and (2) because consideration of his argument is necessary to serve the ends of justice. See also *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020) (discussing the preceding exceptions to the general rule prohibiting an appellant from raising arguments for the first time on appeal).

Nevertheless, Krebbs' contention that his sentencing challenge is properly before us for the first time on appeal is unpersuasive for two reasons. Again, whether defendants have properly preserved an argument for appeal constitutes a question of law over which this court exercises de novo review. *Haberlein*, 296 Kan. at 203.

First, Krebbs' request that we consider his argument for the first time on appeal is unpersuasive because despite Krebbs' assertion otherwise, his sentencing challenge does not involve a question of law arising on proved or admitted facts that is finally determinative of his case. Instead, Krebbs' requested relief is remand for resentencing. Also, although Krebbs argues that his case should be remanded with directions to be resentenced without his criminal history, according to Krebbs' own appellant arguments, section 5 of the Kansas Constitution Bill of Rights allows the trial court to enhance the severity of a defendant's sentence if the fact being relied on to enhance the severity of the defendant's sentence is proven to the jury beyond a reasonable doubt. As a result, even assuming that we accepted Krebbs' interpretation of section 5 of the Kansas Constitution Bill of Rights, our decision would not be finally determinative of Krebbs' case because we would have to remand Krebbs case to the trial court with directions (1) to resentence Krebbs without his criminal history or (2) to resentence Krebbs while relying on his criminal history to enhance the severity of his sentence after the State has proven Krebbs' criminal history to a jury beyond a reasonable doubt.

Second, Krebbs' request that we consider his argument for the first time on appeal is unpersuasive because even if an exception to the general rule prohibiting us from considering arguments raised for the first time on appeal applied, we have no duty to consider his newly raised argument. In *Gray*, our Supreme Court held: "The decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, we have no obligation to do so." 311 Kan. 164, Syl. ¶ 1. It then "decline[d] to utilize any potentially applicable exception to review Gray's new [identical offense doctrine] claim" based on this rule. 311 Kan. at 170. In fact, it clarified that it would not consider Gray's identical offense doctrine argument because by not making the argument before the trial court, Gray "deprived the trial judge of the opportunity to address the issue in the context of [his] case" and therefore also deprived it of significant analysis that would have benefited its review. 311 Kan. at 170.

Simply put, in this case, by not making his argument below, Krebbs deprived the trial court of the opportunity to consider his common-law jury trial right argument. Thus, like in *Gray*, Krebbs' failure to raise his common-law jury trial argument below means that Krebbs has deprived us of significant analysis that would have benefited our review. As a result, we rely on *Gray*'s precedent to decline Krebbs' request to consider his common-law jury trial right argument for the first time on appeal.

Finally, regardless of these preservation issues with Krebbs' common-law jury trial right argument, we reject Krebbs' argument that the trial court violated his common-law jury trial right under section 5 of the Kansas Constitution Bill of Rights by relying on his criminal history to enhance the severity of his sentence because another panel of this court recently considered and rejected this exact argument. As noted by the State in its brief, in *State v. Albano*, 58 Kan. App. 2d 117, 126, 464 P.3d 332 (2020), *aff'd* 313 Kan. 638, 487 P.3d 750 (2021), another panel of this court rejected Krebbs' exact argument, holding that "[t]he sentencing court's use of judicial findings of prior convictions to sentence a defendant under the [KSGA] does not violate section 5 . . . ." 58 Kan. App. 2d

38

117, Syl. ¶ 4. The *Albano* court reached this holding because none of the available authority suggested that section 5's common-law jury trial right was broader than the Sixth Amendment to the United States Constitution's jury trial right, which does not provide a defendant with a right to have his or her criminal history proven to a jury beyond a reasonable doubt for sentencing enhancement purposes. 58 Kan. App. 2d at 127.

Although Krebbs argues that the *Albano* decision was wrongly decided in his appellant's brief, the *Albano* decision was affirmed by our Supreme Court and remains valid law that we are duty-bound to follow. See 313 Kan. 638, Syl. ¶ 4. Likewise, other panels of this court continue to rely on *Albano* to reject other defendants' substantively identical common-law jury trial right arguments. See, e.g., *State v. Reisinger*, No. 119,791, 2021 WL 2171093, at *11 (Kan. App. 2021) (unpublished opinion), *rev. denied* 314 Kan. __ (August 31, 2021). Hence, even if Krebbs had properly preserved his argument that the trial court violated his common-law jury trial right under section 5 of the Kansas Constitution Bill of Rights when it relied on his criminal history to enhance the severity of his sentence, we nonetheless reject Krebbs' arguments based on the analysis in *Albano*. In turn, we affirm the trial court's imposition of a total controlling sentence of 154 months' imprisonment followed by 36 months' postrelease supervision upon Krebbs for his distributing methamphetamine, possessing THC, and criminal possession of a firearm convictions.

Affirmed.